J. L. POWELL, *Plaintiff in Error*, v. THE STATE OF FLORIDA, *Defendant in Error*.

En Banc.

Opinion Filed December 2, 1924.

Where the members of the appellate court are equally divided in opinion as to whether a judgment on writ of error should be reversed or affirmed, and there is no prospect of a change of judicial opinion, the judgment should be affirmed, so that the litigation may not be unduly prolonged.

A Writ of Error to the Circuit Court for Leon County; E. C. Love, Judge.

*W. C. Hodges* and *Fred H. Davis*, for Plaintiff in Error.

*Rivers Buford*, Attorney General, and *J. B. Gaines*, Assistant Attorney General, for the State.

ELLIS, J.—The plaintiff in error was convicted of murder in the second degree upon an indictment charging him

with the murder of Jim Legette in November, 1922. Powell was tried at the Fall term of the Circuit Court for Leon County in that year and sentenced in December, 1922, and seeks to reverse the judgment on writ of error.

The four assignments of error rest upon matters occurring at the trial and are presentable only through a bill of exceptions under the law. The record, as filed in this Court on March 20, 1923, showed that on December 7, 1922, the Judge of the Circuit Court overruled the defendant's motion for a new trial and made an order allowing him sixty days from that date in which to prepare and present his bill of exceptions.

The bill of exceptions was presented to the judge for settlement on February 12, 1923, and signed by him on March 2, 1923. It appeared therefore from the record and the bill of exceptions accompanying it that the bill was presented for settlement more than sixty days from the date of the order allowing the defendant time in which to present it and after the expiration of the term.

The Attorney General moved to strike the bill of exceptions from the record upon that ground.

This motion was met by the attorneys for the plaintiff in error by a motion filed in this court on December 31, 1923, reciting that the bill of exceptions did not show the true facts of the presentation and authentication of same, which in substance were alleged to be that the bill was presented to the judge for his signature on February 12, 1923, but that it was during the same term of the court at which Powell was tried and convicted and that the term was not adjourned until March 1, 1923, and moving that the certified copy of the transcript be sent back to the Clerk of the Circuit Court of Leon County "to have the Bill of Exceptions in the transcript made to conform to

the original as certified to and authenticated by the trial judge.''

There was attached to that motion a certified copy of an order made by the Judge December 26, 1923, purporting to amend the bill of exceptions in so far as the certificate was involved to show that the bill was ''presented and requested to be signed'' on the 12th day of February, A. D. 1923 ''during the said term.'' The order recited that the bill of exceptions ''was filed in due time during a term of the court at which the trial was had and the verdict rendered,'' but that by error and mistake the bill failed to show such fact.

The motion of the Attorney General to strike the bill of exceptions was denied and the motion of the attorney for the plaintiff in error granted. So the transcript of the record was returned to Circuit Court and the bill of exceptions amended so that the last paragraph but one shows that the 12th day of February, A. D. 1923, was during the term instead of after the expiration of the term as shown by the first certificate.

The writer of this opinion opposed the granting of the motion to permit the amendment of the bill of exceptions upon the ground that the proposed amendment was of no utility to give validity to the bill, because it appeared by such proposed amendment that the 12th day of February, 1923, was not within the time limited by the special order of the court for the presentation of the bill of exceptions, and that the record proper, certified under the seal of the court, definitely states that the 12th day of February, A. D. 1923, was after the expiration of said term. And that the term of the court at which the plaintiff in error was tried having expired and a writ of error issued in this court, all authority of the court below to alter or amend the bill of exceptions already allowed and filed was at an

end.   See Michigan Ins. Bank v. Eldred, 143 U. S. 293, 12 Sup. Ct. Rep. 450, 36 L. Ed. 162.

The duty of drawing up and tendering a bill of exceptions belongs to the excepting party and not to the court who has only to consider whether the bill tendered is in due time, in legal form, and conformable to the truth. Any fault in framing or tendering the bill, being the act of the party and not of the court, cannot be amended at a subsequent term, as an error of the clerk in recording inaccurately might be.   The above is the language of Mr. Justice GRAY in the above cited case and so far as I have been able to discover contains a full statement of the law upon the subject.

At common law a bill of exceptions had to be filed at the term at which trial was had.   4 Stand. Ency. of Proc. 334; 3 Blackstone's Commentaries 372; Elliott's App. Prac. Sec. 800.

Our statute does not alter this rule.   See Sec. 2906 R. G. S.   It contains nothing about the time when a bill of exceptions shall be filed, but provides that the judge shall sign, upon request, if the bill fairly states the truth of the matter and the exceptions designed to be taken, and that when signed it becomes a part of the record.

Rule 97, Rules of Circuit Courts—Law Actions—merely provides that the bill of exceptions shall be made up and *signed* during the term of the court at which the verdict is rendered or trial had unless by special order further time is allowed.   But the special order made in this case so far from extending the time limited it to a time definite, which from the amendment appears to be within the term but from the record proper appears to have been beyond or after the term.

The procurement of a bill of exceptions being solely the concern of the party excepting, it is entirely optional with

him whether he will or will not have a bill.  He, therefore, may waive his right entirely or in part by agreeing to or procuring a special order limiting the time within the term when he shall present a bill for the judge's signature.

So I was of the opinion that the judge of the trial court had no authority to alter the bill since it had been filed and a writ of error had issued in this court and that even if the amendment was allowed it did not change the status of the case, because the bill was not signed within the time allowed by the special order and was not *filed* until after the expiration of the term of the court, according to the record proper, nor have I been able to find any decision of this court announcing a contrary doctrine.  The case of Montgomery v. State, 54 Fla. 73, 45 South. Rep. 813, does not hold to the contrary.

The first assignment of error rests upon the order overruling the motion for a new trial.  Under this assignment only the sufficiency of the evidence to support the verdict and the correctness of the ruling declining to give the fourth requested instruction are discussed.

Powell was indicted for murder.  He was convicted of murder in the second degree.  The definition of that degree of murder is as follows:  The unlawful killing of a human being ''when perpetrated by any act imminently dangerous to another, and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual.'' Sec. 5035, Revised General Statutes, 1920.

The evidence is not voluminous.  It consists of the testimony of Doctor Brevard, who told of the character of the wound from which Legette died; that it was a gun shot wound and the gun was fired at close range, the testimony of Tom Elkins, Jedie Elkins, Henry Whitfield and the defendant, J. L. Powell.

On Saturday night, according to the testimony of the defendant, he and Mr. Barber, Mr. Whitfield and another went duck hunting. About nine o'clock they returned to their camp which was near the lake. Mr. Powell went to bed but he was disturbed by the noise made by the boys who "kept yelling around." He said to them that they must "lay down or leave," that he was not going to stand so much racket and they left. It does not appear from his testimony to whom he referred by the term "boys," but elsewhere in the record there is testimony from which it may be inferred that they were members of another party consisting of Tom Elkins and others.

Later during the night, about twelve or one o'clock, Powell was again disturbed by shooting near by and got up with the purpose of quieting "those fellows," as he expressed it. He took his loaded double-barrelled shot gun with him, and came up to a place, about seventy or a hundred yards from his own tent where there was a fire and somebody lying down groaning. He asked what was the trouble. Some one replied, with an oath, that it was none of his business and as the defendant walked up some one "threw a flashlight" on him and drew a pistol on him. He fired his gun and Legette received the charge. Both barrels of the gun were discharged. The defendant said he did not intend to shoot the gun but that he did it in the excitement of the moment. The fact that both barrels of the gun were fired, he intimated, was due to the defective condition of the firearm.

This account of the actual shooting was distinctly contradicted by the two Elkins witnesses for the State, who testified that the defendant came up from his camp armed with a shot gun and threatened to kill all of them and "about that time he pointed his gun and fired."

It was within the province of the jury to harmonize this

conflicting account of the actual shooting or failing in that, accept that which they considered worthy of belief, and reject that which they deemed to be unworthy of credence. The jury accepted the version of the actual shooting which was given by the State's witnesses. It is not within the authority of this Court to reject that finding, it not being clearly against the weight of evidence. If it should arbitrarily do so it would usurp the powers of a jury and depart from the plain path of duty as an appellate tribunal.

There is no occasion to cite authority in support of this doctrine. It has been many times announced by this Court. See John v. State, 16 Fla. 554; Robinson v. State, 24 Fla. 358, 5 South. Rep. 6; Williams v. State, 68 Fla. 88, 66 South. Rep. 424.

If there is one circumstance about which the witnesses did not disagree it is that Powell did not fire the shot in self-defense. He testified that he did not intend to fire the gun. His words were: "It wasn't my intention to shoot it, but I done it in the excitement of the moment, and when I shot that gun, both barrels went off—that is a gun that will do that sometimes, and I heard a man fall and went on up to where the flashlight fell, and I went on up there and I said, 'who in the world is this that is shot' and somebody said, 'it's Legette,' and, of course, I had never seen Mr. Legette, and about that time my son-in-law came up and I called him 'Spencer' and said 'see if that man is hurt' and I said 'look after him and I will try and get a doctor,' " etc.

There were several persons at the place where the defendant shot the deceased; some of them he had not seen before. He left his camp armed with a loaded shotgun and with the avowed purpose of silencing the noise of which he complained. He asked a question, courteous enough according to his statement, and received a discourteous

reply. . A flashlight was turned on him and he fired the gun into the party assembed there which resulted in the death of Legette. Those crcumstances justified the verdict of murder in the secord degree.

The charges requested an. refused upon the law of self-defense constituted the remining grounds of the motion discussed under the first assgnment of error.

Even if the charges announced correct principles of law they were applicable to no phase of the defense as the same was developed by the evidene. The court however in its general charge gave to the jury the law of self-defense.

Charges should be predicaed upon the pleadings and the evidence, and when thereis no evidence to support a charge it is error to give it. But if there was technical error in charging upon the law of self-defense it was not harmful to the defendant andhe does not complain of it.

It is not error for the court to refuse to read charges already given substantially. See Dixon v. State, 13 Fla. 636; Coleman v. State, 26 Fla.61, 7 South. Rep. 367; Toll v. State, 40 Fla. 169, 23 South.Rep. 942; Blanton v. State, 52 Fla. 12, 41 South. Rep. 789; Owens v. State, 65 Fla. 483, 62 South. Rep. 651; Williamsv. State, 73 Fla. 1198, 75 South. Rep. 785.

The next assignment of erro:is that the court erred in denying an extraordinary motn for a new trial. The motion was supplementary to te first motion for a new trial and was made within four dys of the rendition of the verdict. The motion contained ve grounds the substance of which was that the jury was g'lty of misconduct in that after hearing the evidence, argumnt of counsel, and charge of the court they read and consuld a copy of the Revised General Statutes of Florida to asrtain the penalties prescribed by law for the various dyrees of homicide; that they also arrayed themselves in corvict clothes which they

found in the room in which tley were confined while deliberating upon their verdict; .nd that they tried to ascertain from the court through adeputy sheriff the penalties prescribed by law for unlawul homicide and failing to get the information consulte the Revised General Statutes.

The motion was supported by the affidavits of defendant's counsel, whose statemets were based upon information given to them by one of the jury, named H. H. Hawes, and when the motion ame on to be heard the defendant produced as a witness J. R. Jones, Sheriff, and the affidavit of B. F. Willis, ounty Judge, who swore that on November 30th, several dys before the trial, he noticed Volumes 1, 2 and 3 of the Jevised General Statutes in the room which had been occuped by the grand jury and later by the petit jury.  There vas also submitted an affidavit of Walter Norman, a janibr of the building, who swore that on the morning of Dcember 7, 1922, the day upon which the verdict was renered, a juror who was engaged in the trial of the case tol him to straighten out the convict clothes in the jury rom and that the clothing was scattered about the room nd he noticed three law books upon the table and that te books looked like the Revised General Statutes.

The joint affidavit of te twelve jurors was then offered by the defendant to show hat while they were considering of their verdict they coulted the Revised General Statutes relating to murder efore they arrived at a verdict; that they did so in igncance of any impropriety in such conduct.  The court susained the State's objection to the reading of that affidavi in support of the motion.

This ruling was erro See Linsley v. State, 88 Fla. 135, 101 South. Rep. 273.

If the affidavit had een received it would have estab-

lished the fact that the jury not only had access to law books but they were actually read and consulted upon the law relating to the crime with which the defendant was charged and that before the verdict was agreed upon. Such a fact is not one which rests in the personal consciousness of any one juror but was accessible to other testimony and that such conduct vitiated the trial is clearly indicated by this court in Johnson v. State, 27 Fla. 245, 9 South. Rep. 208.

The court is equally divided upon the disposition of this case, Messrs. Justices Whitfield, West and Terrell being of the opinion that the judgment should be affirmed; Mr. Chief Justice Taylor and Messrs. Justices Ellis and Browne being of the opinion that the judgment should be reversed for the reasons above expressed. As there is no likelihood of an agreement between the Justices of the Court in this case on the question presented, the judgment is hereby affirmed under the rule. See State *ex rel.* Hampton v. McClung, 47 Fla. 224, 37 South. Rep. 51.