330 So.2d 853 (1976)
Donnie Lee IVORY, Appellant,
v.
The STATE of Florida, Appellee.
No. 75-943.
District Court of Appeal of Florida, Third District.
April 20, 1976.
Rehearing Denied May 12, 1976.
Phillip A. Hubbart, Public Defender, and Mark King Leban, Asst. Public Defender, and Thomas G. Murray, Legal Intern, for appellant.
Robert L. Shevin, Atty. Gen., and Ira Loewy, Asst. Atty. Gen., for appellee.
Before PEARSON and NATHAN, JJ., and CHARLES CARROLL (Ret.) Associate Judge.
PER CURIAM.
The facts on this appeal have been accurately set forth in the dissenting opinion. The only question on appeal is whether the errors which occurred deprived the defendant of a fair trial upon the charge of murder in the first degree. Because the defendant was found guilty of only the lesser included offense of manslaughter and because the medical examiner's report could not, under the facts of this case, have contributed to the defense of self-defense or have further reduced the crime to assault, we reach the conclusion that the error was harmless. Cf. Cornelius v. State, Fla. 1950, 49 So.2d 332; and Culbertson v. State, Fla.App. 1975, 306 So.2d 142.
Affirmed.
*854 NATHAN, Judge (dissenting).
I respectfully dissent. Donnie Lee Ivory, the defendant, was charged by indictment with first degree murder. During trial, the court reduced the charge to second degree murder and after much deliberation the jury found the defendant guilty of manslaughter. Ivory was convicted of manslaughter and sentenced to five years in the state penitentiary.
The evidence showed that Ivory owed the victim, one Robert Carolina, $5 for a gambling debt. On October 28, 1974, at the Ponderosa Bar, the victim saw Ivory with a check and demanded immediate payment. The two began a fist fight which was broken up. Fifteen minutes later, Ivory returned to the Ponderosa and paid the $5 debt to Carolina who then followed Ivory outside. There was an argument; Carolina pointed his finger in Ivory's face and threatened to kill him; Ivory saw a gun in Carolina's waist band, grabbed it and shot Carolina to death. Ivory contends that he acted in self defense. Several witnesses, including two police officers, testified that Carolina had a bad reputation in the community as a violent person.
The medical examiner testified as to the wounds received by the deceased as a result of the shooting. The medical examiner's report was not admitted into evidence.
After retiring to consider its verdict, the jury sent out two notes requesting the following: the charge to the jury; the defendant's statement; the medical examiner's report and "the brief definitions of third degree murder and the various types of manslaughter." In response, the court advised the bailiff without notifying counsel, that the jury "could have the documentary exhibits, not realizing that one of the items had not been in evidence." The request for the charge was denied, but the medical examiner's report was given to the jury and remained with the jury for approximately 45 minutes before the court requested that the bailiff take it away. The court told counsel that, "It appears that a medical examiner's report, not in evidence was submitted to the jurors in error." The court denied the defendant's motion for a mistrial, but gave the jury a curative instruction to disregard the written medical examiner's report which was not in evidence. "You may, however, rely on the testimony of the medical examiner that you have heard from the witness stand." Ivory was found guilty of manslaughter and was convicted and sentenced.
The thrust of Ivory's appeal is that the trial court erred in permitting the medical examiner's report to be taken into the jury room in response to a request from the jury where the report had never been admitted into evidence, and in failing to give the defendant and his counsel the opportunity to be present and object or request alternative instructions, thereby depriving the defendant of a fair trial and due process of law. I agree with both points.
It is provided in Rule 3.400, RCrP, entitled "Materials to the Jury Room," that the court may permit the jury, upon retiring for deliberation, to take to the jury room, "(d) all things received in evidence other than depositions." The entry into the jury room of unadmitted evidence amounts to an impermissible intrusion of the jury's deliberative process. State ex rel. Pryor v. Smith, Fla.App. 1970, 239 So.2d 85. See Smith v. State, Fla. 1957, 95 So.2d 525, wherein the judge gave the jury, out of the presence of the defendant and defense counsel, a dictionary which was not in evidence.
It is provided in Rule 3.410, RCrP, entitled "Jury Request to Review Evidence or for Additional Instructions," that
"After the jurors have retired to consider their verdict, if they request additional instructions or to have any testimony read to them they shall be conducted into the courtroom by the officer who has them in charge and the court may give them such additional instructions or may *855 order such testimony read to them. Such instructions shall be given and such testimony read only after notice to the prosecuting attorney and to counsel for the defendant." (emphasis added)
Accord Slinsky v. State, Fla.App. 1970, 232 So.2d 451, remanding the cause for a new trial where the jury, while deliberating, requested that certain testimony be read back to them and the trial court summarily denied the request outside the presence of the defendant and without making inquiry, opening court or advising counsel for the State or for the defense.
In view of the defense of self defense interposed by the defendant, Ivory, in the instant case, and based on the close factual situation, whether Ivory's actions were indeed taken in self defense, it is my opinion that the medical examiner's report was inflammatory and highly prejudicial in affecting the jury's verdict of manslaughter. The in-court testimony of the medical examiner was neither so detailed nor illustrative as the written report which the jury had for forty-five minutes, describing the bullet wounds and numerous other aspects of the deceased's person in far more detail than was necessary to establish the fact that Carolina was deceased and the nature of the wounds resulting in death.
The State contends and the majority holds, that the court's error, if any, was harmless since Ivory was merely convicted of manslaughter. I do not agree. An error should not be held harmless if there is a reasonable possibility that it might have contributed to the conviction. Bennett v. State, Fla. 1975, 316 So.2d 41, and cases cited therein.
From the jury's request for definitions of third degree murder and manslaughter, it appears that at least one, if not all, of the jurors did not understand a critical portion of the court's instructions, namely the definition of the crimes and lesser included offenses with which Ivory was charged. Considering the court's failure to notify counsel of the jury's request for such instructions or to give counsel an opportunity to be heard thereon, together with the inflammatory nature of the medical examiner's report, which the jury had for 45 minutes, even though it had not been admitted into evidence, I find that reversible error has been committed and would remand the cause for a new trial.