574 So.2d 124 (1991)
STATE of Florida, Appellant,
v.
Thewell Eugene HAMILTON, Appellee.
No. 75717.
Supreme Court of Florida.
January 17, 1991.
Robert A. Butterworth, Atty. Gen. and Mark C. Menser, Asst. Atty. Gen., Tallahassee, for appellant.
Robert T. Adams, Jr., Marianna, for appellee.
KOGAN, Justice.
The state appeals an order granting a new penalty phase in the capital trial of Thewell Eugene Hamilton. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. See § 924.07(1)(b), Fla. Stat. (1989) (state may appeal new-trial order). The sole issue in this case is whether the jury's recommendation during the penalty phase must be set aside because unauthorized publications were present in the jury room during deliberations.
The facts of Hamilton's crime are stated in this Court's earlier review of this case, in which we remanded for a new trial on all issues. Hamilton v. State, 547 So.2d 630 (Fla. 1989). On remand, Hamilton again was convicted and the jury then recommended the death penalty on both murder counts by a vote of seven to five. The legality of the convictions are not now before the Court.
After the jury returned its penalty recommendation but before sentencing, defense counsel called the trial court's attention to the fact that an alternate juror[1] named Kevilly had brought unauthorized materials into the jury room. These materials *125 consisted of two magazines, "Musclecar Classics" and "Musclecar Review." Defense counsel noted that the magazines, which dealt primarily with automobiles, contained at least one "provocative" advertisement showing a blonde model dressed in a bathing suit. Defense counsel alleged that these materials had a potential to distract jurors from their duties.
It is unclear on this record whether Mr. Kevilly simply left the magazines in the jury room during those times when the jury was excused from the courtroom.[2] The trial court's colloquy with Kevilly, quoted in its entirety below, did not disclose exactly how or at what time the magazines were taken into the jury room:
JUROR: Sir, they were reading material, when we were running in and out and the last time that I had seen them, they were in one of the chairs, or on the table.
THE COURT: Is that your reading material?
A. Yes sir. It was to pass the time, so I wouldn't get in trouble for talking about anything I shouldn't be talking about.
Q. What kind of magazines are they?
A. They are car magazines.
Testifying at the subsequent evidentiary hearing, the only juror called by the defense  the jury foreman  did not recall seeing the magazines at all.[3] The following colloquy occurred between this witness and the assistant state attorney during cross-examination:
Q. Mr. Griffin, during the time that the deliberations of the jury were going on, you were the foreman back here? Right?
A. Yes sir.
Q. During that time, did any juror look at a magazine?
A. Now, I'm trying to rack my brain. If he did, I can't remember. I won't say he did or didn't, but I can't remember, I don't remember that, no sir.
Q. There were twelve of you in the jury room?
A. Right.
Q. All sitting around the table?
A. Yes sir.
Q. Were there any magazines?
A. Are you talking about when we were deliberating in the jury room?
Q. Yes.
A. No I don't think so.
Q. Did you see any juror with any magazines?
A. Not that I can remember, no sir.
Hamilton's counsel did not challenge these statements and waived the opportunity for redirect examination. No other testimony was introduced to rebut the jury foreman's statements, nor did the trial court later express any disbelief about the foreman's testimony. Although two bailiffs were summoned and examined, neither party asked them any questions about the magazines.
Defense counsel moved for a new trial on grounds that the magazines could not lawfully be taken into the jury room under Florida Rule of Criminal Procedure 3.400. In February 1990 the trial court entered an order granting a new trial solely as to the penalty phase. The order states in pertinent part:
ORDERED AND ADJUDGED that the portion of the Motion for New Trial regarding a new "penalty phase" by reason of unauthorized material in the jury *126 room during deliberations is hereby granted... .
In explaining the order, the trial court stated on the record that it was "not willing to jeopardize the prosecution of this case, and the outcome of it, on the flimsy circumstances that one of the jurors had contraband in the juryroom [in] the penalty phase." The trial court then ordered a new penalty phase to be held a month later; and the state appealed on grounds the order set an unfavorable precedent in the circuit.
Under Florida law, a trial court has wide discretion in deciding whether or not to grant a new trial. First National Bank v. Bliss, 56 So.2d 922, 924 (Fla. 1952). However, this discretion is not without limit:
The granting of a mistrial should be only for a specified fundamental or prejudicial error which has been committed in the trial of such a nature as will vitiate the result... . However, when an alleged error is committed which does no substantial harm and the defendant is not materially prejudiced by the occurrence, the court should deny the motion for a mistrial.
Perry v. State, 146 Fla. 187, 200 So. 525, 527 (1941) (citations omitted). Accord Fla. R.Crim.P. 3.600. An abuse of the discretion to grant a new trial thus is subject to reversal on appeal.
In the context of the present case, this general rule must be viewed in light of the fact that jury deliberations are an especially sensitive portion of a trial. The introduction of unauthorized materials conceivably could have a powerful and often unascertainable impact on a verdict or jury recommendation, potentially violating the right to a fair trial guaranteed by the state and federal constitutions. U.S. Const. amend. VI; art. I, § 16, Fla. Const. Recognizing this fact, both the courts of this state and the courts of other jurisdictions have applied a somewhat more refined standard to motions for new trial that are based on the presence of unauthorized materials in the jury room.[4]
For example, we previously have held that the presence of a dictionary in the jury room required reversal of the verdict. Smith v. State, 95 So.2d 525 (Fla. 1957). We gave the following rationale for this conclusion:
"No book should be consulted by a jury in arriving at a verdict and especially one that defines and treats everything expressed by the English language. No maker of dictionaries should ever be allowed to define legal terms to a jury unless such definitions go through the medium of the trial judge, the only one authorized by law to give definitions and explanations to a jury."
Id. at 528 (quoting Corpus Christi St. & Interurban Ry. v. Kjellberg, 185 S.W. 430 (Tex.Civ.App. 1916)) (emphasis omitted). The Smith opinion rested in part on earlier and more general statements that the judge, and only the judge, should be the jury's source of the applicable law.[5]
Our courts have had occasion to revisit the issue on several occasions since Smith was issued. Florida courts are in general agreement that the doctrine applied in Smith is not a per se rule of reversal whenever any unauthorized materials are present in the jury room. Accord United States v. Hill, 688 F.2d 18, 20 (6th Cir.), cert. denied, 459 U.S. 1074, 103 S.Ct. 498, *127 74 L.Ed.2d 638 (1982). Rather, our courts have applied a harmless error analysis that requires close scrutiny of the type of unauthorized material at issue, its relation to the issues at trial, and the extent to which jurors actually consulted the material. Accord State v. Amorin, 58 Haw. 623, 629-31, 574 P.2d 895, 900 (1978).
In Yanes v. State, 418 So.2d 1247, 1248 (Fla. 4th DCA 1982), the Fourth District considered but rejected a claim of harmless error in a criminal proceeding when the trial court sent into the jury its whole book of jury instructions. The court ordered a new trial on grounds that the jury thereby had access to a number of irrelevant jury instructions that may have prejudiced the case. Id. Thus, the unauthorized materials in question  just like the dictionary in Smith  could have been used by jurors to reach an erroneous conclusion as to the law they must apply.
Similarly, in Grissinger v. Griffin, 186 So.2d 58, 59 (Fla. 4th DCA 1966), the Fourth District confronted a negligence trial in which the jury requested a dictionary and the bailiff and defense counsel, with permission of the court, delivered one to the jury room. The court reversed on grounds that the jury may have used the dictionary "to torture the words in the court's charge from their true meaning." Id. It is significant that the trial in Grissinger involved questions of negligence, proximate cause, and contributory negligence. Id. Thus, in considering the meaning of these legal terms, the jury might have relied on common dictionary definitions that were contrary to the law of Florida.
Elsewhere, Florida courts have rejected similar claims based on a finding that the presence of the unauthorized materials could not have affected the verdict.
For example, in Trotter v. State, No. 70,714, slip op. at 4-5 (Fla. Dec. 20, 1990), the trial court denied a motion for new trial based on allegations that jurors were placed in a room that contained law books and a telephone. At a hearing, the evidence established that jurors never used the law books and that the telephone only was used to inform family members that jurors would be late.[6]Id. at 4.
In Kelly v. State, 360 So.2d 77, 77 (Fla. 4th DCA) (mem.), cert. denied, 364 So.2d 887 (Fla. 1978), Judges Downey and Cross[7] confronted a composite sketch of a codefendant mistakenly sent into the jury room after it had been rejected as evidence. The concurring judges held that this was harmless error because the defense had not made "the first suggestion of any prejudice." Id. (Downey, C.J., & Cross, J., concurring specially). It is significant that the unauthorized materials in the Kelly case, unlike that in the cases cited earlier, did not deal with the law applicable to the case. Rather, it dealt with factual issues that had some minor connection to the case.
Similarly, in Ivory v. State, 330 So.2d 853, 853 (Fla. 3d DCA 1976), quashed on other grounds, 351 So.2d 26 (Fla. 1977), the Third District also applied a harmless error analysis. The issue in Ivory was the mistaken delivery to the jury of a medical *128 examiner's report not in evidence during a murder trial. This report contained information on the cause of death of the victim. The majority found harmless error partially because the defendant had been found guilty only of manslaughter, indicating that the jury had rejected the state's murder theories. Id. Once again, the unauthorized material in question dealt not with the law, but with factual issues connected to the case.
Likewise, in Beard v. State, 104 So.2d 680, 681 (Fla. 1st DCA 1958), the First District confronted a letter mistakenly sent to the jury in a trial of two defendants named Beard and Jernigan. The letter disclosed an "illicit affair" between Jernigan and a third party. In finding the error harmless as to Jernigan, the court concluded that the evidence of her guilt was overwhelming and that the contents of the letter could not possibly have altered the outcome. Id. Once again, the unauthorized materials dealt with factual, not legal, issues. Significantly, the Beard court also noted that the letter had no relevance whatsoever to the case of the other defendant, Beard. It thus could not have prejudiced him. Id. In other words, the unauthorized document had no bearing on either the law or the facts of Beard's case.
None of the Florida cases discussed here attempted to formulate a precise test for gauging errors caused by the use of unauthorized documents by jurors. Any effort to devise such a test is complicated by the fact that Florida's Evidence Code, like that of many other jurisdictions, absolutely forbids any judicial inquiry into emotions, mental processes, or mistaken beliefs of jurors.[8] § 90.607(2)(b), Fla. Stat. Ann. (1987) (Law Revision Council Note  1976). Jurors may not even testify that they misunderstood the applicable law. Id.; Songer v. State, 463 So.2d 229, 231 (Fla.), cert. denied, 472 U.S. 1012, 105 S.Ct. 2713, 86 L.Ed.2d 728 (1985). This rule rests on a fundamental policy that litigation will be extended needlessly if the motives of jurors are subject to challenge. Branch v. State, 212 So.2d 29, 32 (Fla. 2d DCA 1968). The rule also rests on a policy "of preventing litigants or the public from invading the privacy of the jury room." Velsor v. Allstate Ins. Co., 329 So.2d 391, 393 (Fla. 2d DCA), cert. dismissed, 336 So.2d 1179 (Fla. 1976).
However, jurors are allowed to testify about "overt acts which might have prejudicially affected the jury in reaching their own verdict." § 90.607(2)(b), Fla. Stat. Ann. (1987) (Law Revision Council Note  1976) (emphasis added). See Maler ex rel. Maler v. Baptist Hosp., 559 So.2d 1157, 1162 (Fla. 3d DCA 1989) (discussing application of this principle).
Obviously, any test that required proof or disproof that jurors actually were prejudiced would quickly run afoul of section 90.607(2)(b). Since Florida jurors may not testify about their own thought processes, the party carrying the burden of proof always would be unable to prove a case.
This problem has been recognized by Colorado, which until recently adhered to a rule that creates a rebuttable presumption requiring the state to prove that no actual prejudice occurred. E.g., People v. Boulies, 690 P.2d 1253, 1256 (Colo. 1984), questioned, Wiser v. People, 732 P.2d 1139, 1141-42 (Colo. 1989). In this sense, the rebuttable presumption appears consistent with the harmless error analysis used by our district courts in confronting this issue. *129 Under Florida law, harmless error analysis always places the burden of proof on the state as the recipient of the benefit of error. See State v. DiGuilio, 491 So.2d 1129, 1135 (Fla. 1986).
However, as the Colorado Supreme Court itself later noted, the rebuttable presumption can create other serious problems: The state may be unable to rebut the presumption "because of the longstanding rule proscribing evidence concerning the mental processes of jurors." Wiser, 732 P.2d at 1141. In other words, the state could not elicit any information about the actual impact the unauthorized materials had on jurors.
To avoid this same problem, some federal courts have taken a somewhat different approach. The Fifth Circuit Court of Appeals confronted the question of unauthorized jury materials in a case involving defendants on trial for drug trafficking. Paz v. United States, 462 F.2d 740, 745 (5th Cir.1972). During trial, court officers discovered that someone had brought into the jury room nonlegal books that dealt with "drug traffic, drug problems, and people involved in drugs." Id. The trial court summarily denied a motion for mistrial.
Holding that an evidentiary hearing was necessary based on these facts, the Fifth Circuit remanded for application of the following test:
[D]efendants are entitled to a new trial unless it can be said that there is no reasonable possibility that the [unauthorized] books affected the verdict.
Id. Later, the district court conducted the hearing and concluded there was no reasonable possibility of prejudice. The Fifth Circuit then affirmed. Rodriguez y Paz v. United States, 473 F.2d 662, 663-64 (5th Cir.), cert. denied, 414 U.S. 820, 94 S.Ct. 115, 38 L.Ed.2d 52 (1973).
Although the Paz court did not directly address the issue, the Fifth Circuit later determined that the burden of proof rests with the government, under a harmless error analysis. Accord L. Hardwick & B. Ware, Juror Misconduct: Law & Litigation 6-52.2 to 6-56 (1990) (discussing presumption of prejudice). In United States v. Howard, 506 F.2d 865, 869 (5th Cir.1975), the court stated that at the evidentiary hearing counsel must not inquire into matters relating to the jurors' thought processes. The inquiry
must be limited to objective demonstration of extrinsic factual matter disclosed in the jury room. Having determined the precise quality of the jury breach, if any, the [trial] court must then determine whether there was a reasonable possibility that the breach was prejudicial to the defendant... . Though a judge lacks even the insight of a psychiatrist, he must reach a judgment concerning the subjective effects of objective facts without benefit of couch-interview introspections. In this determination, prejudice will be assumed in the form of a rebuttable presumption, and the burden is on the Government to demonstrate the harmlessness of any breach to the defendant.
Id. The same approach has been adopted by the Eleventh Circuit. United States v. Perkins, 748 F.2d 1519, 1533-34 (11th Cir.1984). Accord Wiser, 732 P.2d at 1141-42.
We agree with the test formulated by the Fifth Circuit and adopted by the Eleventh, finding that it best comports with both Florida law and the constitutional rights of defendants. This rule avoids the problems of a test that demands inquiry into the thought processes of jurors  a practice forbidden by section 90.607(2)(b) of the Florida Evidence Code. Similarly, the Fifth Circuit's test employs the harmless error analysis already used by Florida courts in gauging issues of this type. Yanes; Ivory; Beard. See also DiGuilio.
In addition, the Fifth Circuit's test complies with constitutional law. Some federal courts have noted that unauthorized materials used by jurors in their deliberations may raise issues under the sixth amendment of the United States Constitution. In Marino v. Vasquez, 812 F.2d 499, 505 (9th Cir.1987), for example, the court said that the rights of confrontation, cross examination, and assistance of counsel may be implicated. Unauthorized materials can circumvent these rights to the extent that *130 they have not been subjected to the rigors of the adversarial process. Id. (quoting Gibson v. Clanon, 633 F.2d 851, 853 (9th Cir.1980), cert. denied, 450 U.S. 1035, 101 S.Ct. 1749, 68 L.Ed.2d 231 (1981)). The Eleventh Circuit  the jurisdiction of which includes Florida  has held that these same concerns underlay its adoption of the Paz/Howard test. Perkins, 748 F.2d at 1533.
The Ninth Circuit also has noted that the harmless error test as elaborated in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), must be applied to the extent that these constitutional issues are present. In fact, the Ninth Circuit has reversed state court judgments for failure to use the Chapman test in cases of this type. Marino, 812 F.2d at 504. This holding is significant because Florida's rule of harmless error as adopted in DiGuilio, 491 So.2d at 1135, is expressly modeled after the rule in Chapman. We thus believe that application of our own harmless error doctrine is the best way to comply with both state and federal constitutional requirements. U.S. Const. amend. VI; art. I, § 16, Fla. Const.
Indeed, the failure to adopt the rule used by the federal circuit that includes Florida would seem fruitless. It would open the judgments of our courts to a federal collateral challenge whenever a jury's use of unauthorized materials might be deemed to violate the sixth amendment. Florida courts no less than the federal must operate under the constitution. U.S. Const., art. VI. Accordingly, as a matter of Florida law, we adopt the test used by the Fifth Circuit in Paz and Howard, and hold that the DiGuilio analysis should be used in gauging the state's burden of proving harmless error.
We hasten to note, however, that the evidentiary hearing contemplated by Paz and Howard need not be conducted when an unreasonable allegation of juror misconduct is made. In Amazon v. State, 487 So.2d 8, 11 (Fla.), cert. denied, 479 U.S. 914, 107 S.Ct. 314, 93 L.Ed.2d 288 (1986), we stated that the defendant must at least allege facts establishing a prima facie argument for prejudice. The Amazon Court factually was confronting some allegations of juror misconduct that had almost no potential to prejudice the defendant. Amazon recognized that trivial "misconduct" seldom will warrant a court hearing. Thus, a hearing is unnecessary if the allegations, taken as true on their face, had no reasonable possibility of affecting the verdict. On this question, there can be no bright-line test. Rather, the courts must balance two competing interests: the right of a particular defendant to a fair trial in compliance with federal and Florida law, and the policy that jurors must be shielded from needless prying and harassment.
Turning to the facts at hand, we find that the unauthorized materials in question  automobile magazines  clearly were irrelevant both to the legal and factual issues of this case. Their potential to prejudice the case was slight or nonexistent. See Beard. Although defense counsel alleged that the materials were distracting to jurors, this statement was based solely on counsel's own reaction to a single advertisement depicting a woman in a bathing suit. We do not believe the trial court would have erred in summarily denying the motion for new trial based on the facts alleged in defense counsel's motion. See Amazon. However, we commend the court for conducting the hearing anyway in light of the fact that it obviously entertained serious doubt about the juror misconduct.
During the hearing below, as in all cases of this type, the state bore the burden of eliciting evidence about actual juror conduct, or a lack of conduct, showing no reasonable possibility that the breach affected the verdict. Howard, 506 F.2d at 869; Paz, 462 F.2d at 745. This burden is inherently easier to meet where, as here, the unauthorized materials clearly are irrelevant to both the law and the facts of the case. Beard. The state can meet its burden simply by establishing that jurors were not overly distracted by the magazines, since it is not reasonable to assume that jurors derived any prejudicial legal or factual *131 conclusions from automobile magazines.[9]
The only testimony on this question was that of the jury foreman during cross-examination by the state. Although this testimony was not entirely unequivocal, the foreman nevertheless testified that he did not recall seeing any juror with the magazines during deliberations and otherwise was unaware of the magazines' presence. This testimony was unrebutted by Hamilton's counsel. Accordingly, we must conclude that the error was harmless beyond any reasonable doubt. See DiGuilio, 491 So.2d at 1135. There is no reasonable possibility that a verdict has been affected by unauthorized materials that jurors did not consult, Trotter, especially when those materials are irrelevant to the factual and legal issues. Beard.
We commend the trial court for seeing that jurors were not questioned regarding their mental processes and thoughts. See § 90.607(2)(b), Fla. Stat. (1987). However, the trial court should have found the error harmless beyond a reasonable doubt based on the testimony of the jury foreman. DiGuilio. The failure to reach such a conclusion and deny the defense's motion was an abuse of discretion. See Perry, 200 So. at 527. A new sentencing hearing was unwarranted in light of the evidence at hand, which the trial court itself characterized as "flimsy circumstances."
Accordingly, the order under appeal is reversed. This cause is remanded to the trial court for further proceedings consistent with this opinion.
It is so ordered.
SHAW, C.J., OVERTON, McDONALD, BARKETT and GRIMES, JJ., and EHRLICH, Senior Justice, concur.
NOTES
[1] Defense counsel identified Kevilly as an alternate juror in making his motion for new trial.
[2] The record is not entirely clear that Kevilly even participated in the final deliberations. As an alternate juror, Mr. Kevilly was subject to being excused from deliberations unless a regular juror had been dismissed. However, the judge's written order on the motion for new trial at least suggests that Kevilly was in fact present at the deliberations. The trial court stated that "one of the jurors had contraband in the juryroom [during] the penalty phase." However, the resolution of this case would be the same whether or not Kevilly was present during deliberations.
[3] We note that the questions posed to the juror were constrained by the requirements of section 90.607(2)(b), Florida Statutes (1987), which prohibit inquiry into jurors' thought processes. This matter is discussed more fully infra. Thus, counsel below properly limited their inquiry solely to the observable events surrounding the presence of the magazines in the jury room.
[4] For a general treatment of the question, see Annotation, Prejudicial Effect of Jury's Procurement or Use of Book During Deliberations in Criminal Cases, 35 A.L.R.4th 626 (1985); Annotation, Prejudicial Effect of Jury's Procurement or Use of Book During Deliberations in Civil Cases, 31 A.L.R.4th 623 (1984).
[5] In Johnson v. State, 27 Fla. 245, 275, 9 So. 208, 213 (1891), we stated that

it is erroneous to allow the jury, after retiring to consider of their verdict, to have access to law books of any description. They [the jury] must get their instructions as to the law of the case from the court, and not from their own perusal of the books.
One other early case set no precedent because of a split court. In Powell v. State, 88 Fla. 366, 102 So. 652 (1924), an evenly divided court affirmed a conviction returned by a jury that had consulted statute books during their deliberations. Writing for one of the three-member pluralities, Justice Ellis argued that this conduct "vitiated the trial" under the precedent in Johnson. The other plurality reached the opposite conclusion.
[6] The First District has reached a similar conclusion in a case in which a juror consulted her pocket dictionary and read aloud from it during deliberations to help ascertain the meaning of the term "reasonable doubt." Doutre v. State, 539 So.2d 569, 569 (Fla. 1st DCA 1989), review denied, 545 So.2d 1366 (Fla. 1989). The Doutre court, however, clearly erred in this holding. The Doutre court permitted an improper inquiry into the thought processes of jurors and then based its finding on this inadmissible evidence. See § 90.607(2)(b), Fla. Stat. (1987) (jurors may not be questioned about thought processes). Furthermore, the court countenanced juror misconduct that permitted speculation on the meaning of the crucial term "reasonable doubt." This clearly violated the holding of Smith v. State, 95 So.2d 525 (Fla. 1957). Accordingly, we disapprove Doutre to the extent it conflicts with this opinion and with Smith.
[7] This was a special concurrence to a decision without opinion. Only three judges were on the panel, and two of them signed the special concurrence. While the special concurrence to a decision without opinion was somewhat unusual, it clearly expressed the views of a majority of the judges hearing the case. See Kelly v. State, 360 So.2d 77, 77 (Fla. 4th DCA) (mem.) (Downey, C.J., & Cross, J., specially concurring), cert. denied, 364 So.2d 887 (Fla. 1978).
[8] The statute provides:

Upon an inquiry into the validity of a verdict or indictment, a juror is not competent to testify as to any matter which essentially inheres in the verdict or indictment.
§ 90.607(2)(b), Fla. Stat. (1987). The intent of this provision as expressed in its accompanying notes is to codify the relevant holding of McAllister Hotel, Inc. v. Porte, 123 So.2d 339, 344 (Fla. 1959), which stated:
[T]he law does not permit a juror to avoid his verdict for any reason which essentially inheres in the verdict itself, as that he "did not assent to the verdict; that he misunderstood the instructions of the Court; the statements of witnesses or pleadings in the case; that he was unduly influenced by the statements or otherwise of his fellow jurors, or mistaken in his calculations or judgment, or other matters resting alone in the juror's breast."
Id. (quoting Wright v. Illinois & Miss. Tel. Co., 20 Iowa 195, 210 (1866)).
[9] Obviously, this conclusion might be different if the magazines dealt with legal or factual matters that might be deemed to have some relevance to the case.