NORTHCUTT, Judge.
Robert Miner tripped and fell at McKesson Corporation’s warehouse, then sued McKesson for his resulting injuries. When the matter was tried the jury found both parties were negligent, and it awarded damages to Miner. Then the case went awry: the trial court granted McKesson’s motion for mistrial. We treat that order as one granting a new trial, and we reverse it. See Keene Bros. Trucking, Inc. v. Pennell, 614 So.2d 1083 (Fla.1993) (explaining that a mistrial granted after the jurors are discharged is treated as an ap-pealable order granting a new trial). On cross-appeal, we affirm the denial of McKesson’s motion for directed verdict.
The jurors reached their verdict late in the day. It had been nearly four o’clock when the parties finished presenting their evidence, and the court and attorneys were concerned that the jury might prefer to leave for the day and return the next for closing arguments and deliberations. When the judge asked the jurors their preference, however, one replied “No, we want to continue. Get it over with.”
*1158 Shortly after the jurors began their deliberations, they sent the court two questions: “Can we compensate [Miner] $14,392 for medical and $7,500 for lost wages without reduction of these amounts if we feel shared responsibility?” and “Can we ask ... McKesson to pay [Miner’s] legal fees?” The judge responded to the first question by rereading his previous instruction which stated that the jury should not reduce any award because of Miner’s negligence. He advised that the court would reduce ■ the total damages by Miner’s percentage of negligence. Regarding the second question, the court instructed the jury that it could not require McKesson to pay Miner’s attorney’s fees. It explained that the only damages award-able were those previously addressed in the jury instructions and included on the verdict form.
The jurors returned to their deliberations and, about fifty minutes later, sent in a third question: “What happens if we are split and can’t reach an agreement?” But before the court could answer this question, the jurors announced they had reached a verdict. They found Miner fifty percent negligent, and awarded him $14,392 for past medical expenses, $7,500 for past lost earnings and $22,500 for past pain and suffering. They awarded nothing for future damages. After the judge discharged the jury, he informed the parties that one of the jurors had thrown the verdict form at the bailiff when she entered the jury room.
When ordering the new trial the circuit judge stated that the jurors had “engaged for whatever reason in activities and considerations beyond the scope of the instructions on the law” and that the verdict “was thrown together in some haphazard fashion.” These observations, apparently based on the jurors’ questions and behavior described above, indicate the judge concluded the verdict was the product of juror misconduct.
This kind of issue generally arises post-verdict, when a juror comes forward to report some problem that occurred during deliberations. In determining whether a new trial is warranted, a court must determine whether the facts reported are matters that inhere in the verdict and are subjective in nature, or are extrinsic to the verdict and objective. Devoney v. State, 717 So.2d 501, 502 (Fla.1998). A juror is not competent to testify about matters inhering in the verdict, such as jurors’ emotions, mental processes, mistaken beliefs, or understanding of the applicable law, and these matters cannot be used to impugn a verdict. § 90.607(2)(b), Fla. Stat. (1999); Devoney, 717 So.2d at 501; State v. Hamilton 574 So.2d 124, 128 (Fla.1991). Generally, courts have permitted attacks on verdicts only where allegations showed that the jurors’ deliberations were influenced by external sources or that the verdicts were reached by lot, quotient or some other improper means. Devoney, 717 So.2d at 503 (and cases cited therein); Phares v. Froehlich, 582 So.2d 683, 685 (Fla. 2d DCA 1991).
In this case, no juror reported any such impropriety; instead, the judge inferred misconduct based on the jurors’ questions and behavior. In regard to the former, we note that the jury’s questions involved matters that inhere in the verdict. Cf. Orange County v. Piper, 585 So.2d 1182 (Fla. 5th DCA 1991) (holding that verdict cannot be challenged on grounds of compromise verdict or jurors discussing matters not introduced in evidence); Phares, 582 So.2d at 685 (holding that allegation jurors increased amount of verdict to include an unauthorized attorney’s fee inhered in verdict). Moreover, a jury has the right to ask questions that will assist it in arriving at a just result. Sears, Roebuck and Co. v. Polchinski, 636 So.2d *1159 1369, 1371 (Fla. 4th OCA 1994). When questions suggest juror confusion, the trial court should attempt to ameliorate it. Id.
Here, the jurors’ inquiries themselves did not support the grant of a new trial. They did not even hint that the jurors were reaching their verdict by improper means or that their deliberations were affected by external sources. At most, the questions showed that they may have been confused about the damages awardable. But the judge properly undertook to ameliorate any such confusion by his instructions and answers. Absent evidence to the contrary, the law presumes that jurors have followed the judge’s instructions. Sutton v. State, 718 So.2d 215, 216 n. 1 (Fla. 1st DCA 1998). In this case, the verdict was consistent with the evidence presented. The jurors awarded Miner the exact amount of the medical bills he claimed. The damages for lost wages and pain and suffering were substantially lower than he requested. Nothing in the record contradicts the presumption that the jurors followed the judge’s instructions in this case.
Likewise, although the jurors’ behavior may have shown they were frustrated or anxious to finish their task, nothing about their actions suggested that external sources affected the verdict or that it had been reached by some improper method. The trial court abused its discretion in granting the new trial.
We have also considered McKesson’s argument that the court should have granted its motion for directed verdict. We cannot say that the trial judge erred in denying the motion, and we affirm.
WHATLEY, A.C.J., and DAVIS, J., concur.