LEVINE, J.
 

 The issue presented is whether the trial court erred in denying the appellant’s motion for new trial, where a juror used a smartphone during a break in jury deliberations to look up the definition of “prudent,” a term used in the jury instructions and during closing arguments. We find that it was error to deny the motion, and the appellant is entitled to a new trial.
 

 The appellant was charged by indictment with first-degree murder and convicted of manslaughter after a jury trial. The victim and his family moved to the appellant’s neighborhood in September 2006. The appellant stopped by the victim’s house to introduce himself and welcome the victim to the area. Later that night, the victim woke his mother and her fiancé to tell them that the appellant had
 
 *161
 
 pulled a gun on him while he was walking his dog. The victim called his mother during the confrontation, and the state, over objection, played the recording of the confrontation from the mother’s voicemail.
 

 The victim’s mother and fiancé convinced the victim not to call the police to report the confrontation. The victim then drove to the appellant’s house and pulled into his driveway. The victim honked the car horn and then knocked on the appellant’s front door. The victim’s family followed the victim to the appellant’s house. The victim’s sister heard the victim say, “[Y]ou have a gun behind there, don’t you.” At that point, the appellant stepped out carrying a rifle and pointed it at the victim. The appellant and victim exchanged words, and then there was a flash and a shot fired. The victim was no longer standing. The appellant took two steps forward, lowered the gun, and fired again. The victim sustained two gunshots, including a fatal wound to his abdomen.
 

 After the police arrived, the appellant gave a statement after being read his
 
 Miranda
 
 rights. The appellant told the police that he encountered the victim while the victim was walking his dog with a beer bottle in his hand. The appellant asked the victim what he was doing in front of the appellant’s driveway. The victim said he was the new neighbor. The appellant could smell alcohol on the victim’s breath. The appellant told the victim that he was glad a neighbor was walking a dog at night, due to the crime in the neighborhood. At that point, the victim asked if the appellant thought the victim was “going to be in control here” and whether the appellant was afraid of him. The victim asked if the appellant had a gun, and the appellant said he had a gun in his house. The victim accused the appellant of threatening him and informed the appellant that he knew martial arts. The victim told the appellant to “go back to Cuba” and threatened to call the police. The appellant told the victim to get off his property. The victim at this point “pushe[d]” the appellant in “the mouth” and threw a beer bottle at him.
 

 The appellant did not call the police after the victim left. The appellant claimed that, from his house, he heard the victim in his own house yell, “[H]e’s dead meat, how could he dare to threaten me, I am going to kill him.” When the victim pulled his vehicle in the appellant’s driveway, the appellant retrieved his shotgun. The victim banged on the appellant’s front door, threatening to kill him. The victim told the appellant to open the door or he would shoot it down. The appellant opened the door a bit and told the victim to go away. The appellant claimed that the victim had a gun and claimed the victim said he did not care whether he lived or died. When the victim moved, the appellant shot him. The appellant shot the victim again, because he was not “sure of where or how [he] shot him.” The appellant claimed that the victim’s family must have taken the victim’s gun from the scene. The victim’s family denied taking any gun and denied the accusation that the victim made any threats regarding the appellant.
 

 Detective Bianchi testified that the appellant’s door to his home was solid and in good shape. The testimony of the detective, based on his prior construction work, was admitted over the appellant’s objection. The defense subsequently introduced an investigator who testified that there was damage to the door frame and the door could easily be pried opened within “seconds.”
 

 The appellant testified at trial about his initial encounter with the victim in the early morning hours. The appellant let the victim believe that the waistband that
 
 *162
 
 the appellant wore for back problems was a gun. Later, when the victim returned to the appellant’s house, the appellant retrieved his gun when the victim got out of his car. The appellant’s only thought was to protect himself. The victim “started banging on the door,” yelling, “[Y]ou threatened me, I’m going to kill you, open the door, I know you are there.” The victim hit the appellant’s hand with “something heavy, metal.” The appellant, in response, pointed his gun at the victim. The victim’s hands were not visible, and the appellant shot him when the victim moved his elbow up and said, “I don’t care if I live or die but you are dead.”
 

 The appellant was convicted of manslaughter with a firearm, a lesser included offense. After the appellant was convicted, a juror contacted defense counsel and claimed that during a break from jury deliberations, the jury foreperson used a smartphone, specifically an iPhone, to look up the definition of “prudence.” The court granted a motion to interview jurors and determined, after an evidentiary hearing, that there was juror misconduct based on the fact that the jury foreperson utilized his smartphone to search an internet site, Encarta, for the definition of “prudent” or “prudence.” The foreperson shared this definition with other jurors during deliberations. At the hearing, the foreperson testified that he did not bring the smart-phone physically into the jury room, but he shared the definition that he remembered basically as meaning “careful and sensible, with care to consequences.” Many of the other jurors who testified at the hearing remembered another juror sharing the definition of “prudent.” The court found that the misconduct was compounded by the foreperson sharing the definition with other jurors. • The trial court concluded, nevertheless, that the juror misconduct was harmless and denied the appellant’s motion for new trial.
 

 The standard of review of a trial court’s denial of a motion for new trial on the grounds of juror misconduct is abuse of discretion.
 
 State v. Hamilton,
 
 574 So.2d 124, 126 (Fla.1991). “A new trial could be warranted if the jurors considered unauthorized materials affecting their verdict.”
 
 Bush v. State,
 
 809 So.2d 107, 115-16 (Fla. 4th DCA 2002). Juror misconduct gives rise to a rebuttable presumption of prejudice.
 
 James v. State,
 
 843 So.2d 933, 937 (Fla. 4th DCA 2003).
 

 In this case, the trial court found the utilization of the smartphone to access Encarta to look up the definition of “prudent” was juror misconduct. Using Encarta to access a dictionary is, of course, no different than utilizing a bound dictionary. A dictionary is not one of the materials permitted to be taken into the jury room.
 
 Smith v. State,
 
 95 So.2d 525, 528 (Fla.1957);
 
 Greenfield v. State,
 
 739 So.2d 1197 (Fla. 2d DCA 1999) (citing Fla.R.Crim. P. 3.400). Thus, a dictionary can not be considered by the jurors. The fact that the foreperson utilized the smart-phone to look up the definition of the word during a break and later shared his recollection of the definition with other jurors during deliberations is no less a juror misconduct than if the foreperson physically brought the smartphone into the jury room and read the definition therefrom.
 

 “Once ... juror misconduct is established by juror interview, the moving party is entitled to a new trial
 
 unless
 
 the opposing party can demonstrate that there is no reasonable possibility that the juror misconduct affected the verdict.”
 
 Norman v. Gloria Farms, Inc.,
 
 668 So.2d 1016, 1020 (Fla. 4th DCA 1996). It is true that the mere presence of unauthorized material in the jury room is not per se reversible error.
 
 Hamilton,
 
 574 So.2d at 126. In
 
 Hamilton,
 
 the Florida Supreme
 
 *163
 
 Court found the presence of automobile magazines resulted in slight or non-existent prejudice to the defendant because they were irrelevant to both the legal and factual issues in the case.
 

 In the present case, looking up the definition of “prudent” could hardly be considered irrelevant to the legal and factual issues in this case. The word “prudent” was mentioned in the jury instructions given by the trial court. The state mentioned the term repeatedly during closing argument. The facts of this case center on whether the appellant acted in a “prudent” manner by his actions when confronted by the victim at his front door and whether the appellant should have called 911 instead of opening the door. The concept of “prudence” is one that could be key to the jury’s deliberations. At the very least, we cannot say that there is no reasonable possibility that the juror’s misconduct, by utilizing the smartphone to retrieve the definition of “prudence,” did not affect the verdict in this case.
 

 This result is consistent with that of other courts which, for many years, have reversed convictions for the improper utilization of dictionaries.
 
 See Smith,
 
 95 So.2d at 528;
 
 Grissinger v. Griffin,
 
 186 So.2d 58 (Fla. 4th DCA 1966);
 
 Jordan v. Brantley,
 
 589 So.2d 680 (Ala.1991) (finding prejudice where foreperson used a dictionary to look up meaning of “prudent” and “reasonable” and discussed the meanings with other jurors);
 
 Alvarez v. People,
 
 653 P.2d 1127, 1130-32 (Colo.1982) (finding prejudice where a juror looked up the words “reasonable,” “imaginary,” and “vague” and shared the definitions with another juror).
 

 As to the other issues raised by the appellant, we find no error. With respect to the refusal to give special jury instructions, we find that the trial court committed no error since “standard jury instructions are presumed correct and are preferred over special instructions.”
 
 Lynch v. State,
 
 829 So.2d 371, 375 (Fla. 4th DCA 2002) (quoting
 
 Stephens v. State,
 
 787 So.2d 747, 755-56 (Fla.2001)). We also find the trial court did not abuse its discretion by admitting an unintentionally taped conversation between the appellant and victim.
 
 See Nardone v. State,
 
 798 So.2d 870, 874 (Fla. 4th DCA 2001);
 
 Otero v. Otero,
 
 736 So.2d 771 (Fla. 3d DCA 1999) (concluding that a taped conversation was properly admitted into evidence where the taping occurred accidently, not intentionally). Finally, the failure to conduct a
 
 Richardson
 

 [1]
 

 hearing regarding the testimony of Detective Bianchi is moot because we are remanding this case for a new trial.
 

 Although here we confront new frontiers in technology, that being the instant access to a dictionary by a smartphone, the conduct complained of by the appellant is not at all novel or unusual. It has been a longstanding rule of law that jurors should not consider external information outside of the presence of the defendant, the state, and the trial court. Based upon the facts of this case, and the key concern of the appellant’s conduct, we cannot say that the intrusion of the definition of “prudent” into the jury deliberations did not affect the jury verdict, and as such we are compelled to reverse and remand.
 

 Reversed and remanded for a new trial.
 

 STEVENSON and DAMOORGIAN, JJ., concur.
 

 [1]
 

 .
 
 Richardson v. State,
 
 246 So.2d 771 (Fla.1971).