579 So.2d 97 (1991)
BAPTIST HOSPITAL OF MIAMI, INC., Petitioner,
v.
James MALER, Jr., Etc., et al., Respondents.
No. 76094.
Supreme Court of Florida.
May 2, 1991.
Parenti & Falk, P.A., and Marc Cooper and Sharon L. Wolfe of Cooper, Wolfe & Bolotin, P.A., Miami, for petitioner.
Christopher Lynch of Adams, Hunter, Angones, Adams & McClure, Miami, for respondents.
*98 PER CURIAM.
We have for review Maler ex rel. Maler v. Baptist Hospital of Miami, Inc., 559 So.2d 1157 (Fla. 3d DCA 1989), based on certified conflict with Preast v. Amica Mutual Insurance Co., 483 So.2d 83 (Fla. 2d DCA), review denied, 492 So.2d 1334 (Fla. 1986). We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.
Joni and James Maler brought a malpractice action on their own behalf and that of their brain-damaged child. They alleged that Baptist Hospital of Miami and its agents improperly diagnosed a bacterial infection caught by their child at birth, which resulted in brain damage to the infant. At trial, the jury found Baptist Hospital sixty percent negligent for total damages of $1.5 million. Jurors agreed in open court that this was their verdict. The trial judge then dismissed them and said "You are free to discuss this case with anyone who will listen."
Upon leaving the courthouse a short while later, counsel for Baptist Hospital chanced upon two jurors. The jurors initiated the conversation and allegedly stated that their verdict had been influenced by sympathy for the brain-damaged child and the fact that the hospital had insurance. Two days later, the attorney filed a motion to interview all the jurors. In support of the motion, he attached his own affidavit and that of his cocounsel, who had witnessed the conversation with the jurors. In pertinent part, the affidavit from Baptist Hospital's attorney states:
a. [Juror] Lemus stated that the undersigned won the case, but the jury felt so sympathetic for the child that it awarded money thinking that an insurance company would pay the verdict and not the hospital itself. He also commented that some members of the jury wanted to award even more money than they did and he tried to hold the verdict down believing that a verdict in the range of $800,000 would be enough.
b. [Juror] Prellezo stated that he was at the other end of the jury from Mr. Lemus and wanted to award money to this child. He also said in response to a question by the undersigned about the experts for the plaintiffs and the defendant that Dr. Abramson was a "joke" and Dr. Eichenwald was impressive. Lastly, he was asked by the undersigned whether the jury concluded that the pediatrician was called on the day after discharge and he stated that this issue was not discussed by the jury.
The other attorney who witnessed the conversation with the jurors filed an affidavit containing the following pertinent statement:
6. Mr. Lemus told us that he did not think that anyone at Baptist Hospital had done anything wrong. He also told Mr. Parenti that he did not think that the plaintiffs had proved their case. Mr. Lemus stated that some of the jurors wanted to award $5,000,000 or $6,000,000, which he felt was outrageous. One of the two jurors said that we knew the hospital had insurance which other jurors mentioned also, and we had to award money because someone had to take care of this child.
7. Mr. Parenti asked the jurors what they thought of Dr. Abramson. Mr. Prellazo [sic] said that they thought he was a joke. Mr. Parenti asked both Lemus and Prellazo [sic] whether they believed Dr. Abramson. Both indicated they did not.
8. Mr. Parenti asked the jurors what they thought of Dr. Eichenwald. Mr. Prellezo said he was the only person the jury felt was a real doctor.
The trial court granted the motion to interview jurors and entered an order stating that the following two questions would be posed to the jurors:
1. Did the jury agree before the actual signing of the verdict form to find for the child, James Maler, Jr., for reasons outside of the evidence, such as sympathy, insurance, etc.?
2. Did the jury agree to find for the child, James Maler, Jr., although the greater weight of the evidence supported a verdict for the Defendant, Baptist Hospital of Miami, Inc.[?]
*99 In the event any juror answered "yes" to one of these questions, the court announced that appropriate follow-up questions would be posed.
The Malers then filed a petition for writ of certiorari in the Third District Court of Appeal. The Third District quashed the trial court's order after ruling that the questions dealt with matters that inhered in the verdict itself, thus rendering them impermissible under Florida law. Maler ex rel. Maler v. Baptist Hosp. of Miami, Inc., 559 So.2d 1157 (Fla. 3d DCA 1989).
We recently set forth the test for gauging claims of juror misconduct in the case of State v. Hamilton, 574 So.2d 124 (Fla. 1991). There we said that, in considering whether to authorize inquiry into alleged jurors misconduct, the trial court must determine exactly what type of information will be elicited from the jurors, because
Florida's Evidence Code, like that of many other jurisdictions, absolutely forbids any judicial inquiry into emotions, mental processes, or mistaken beliefs of jurors. § 90.607(2)(b), Fla. Stat. Ann. (1987) (Law Revision Council Note  1976). Jurors may not even testify that they misunderstood the applicable law. Id.; Songer v. State, 463 So.2d 229, 231 (Fla.), cert. denied, 472 U.S. 1012, 105 S.Ct. 2713, 86 L.Ed.2d 728 (1985). This rule rests on a fundamental policy that litigation will be extended needlessly if the motives of jurors are subject to challenge. Branch v. State, 212 So.2d 29, 32 (Fla. 2d DCA 1968). The rule also rests on a policy "of preventing litigants or the public from invading the privacy of the jury room." Velsor v. Allstate Ins. Co., 329 So.2d 391, 393 (Fla. 2d DCA), cert. dismissed, 336 So.2d 1179 (Fla. 1976).
However, jurors are allowed to testify about "overt acts which might have prejudicially affected the jury in reaching their own verdict." § 90.607(2)(b), Fla. Stat. Ann. (1987) (Law Revision Council Note  1976) (emphasis added). See Maler ex rel. Maler v. Baptist Hosp., 559 So.2d 1157, 1162 (Fla. 3d DCA 1989) (discussing application of this principle).
Hamilton, 574 So.2d at 128 (emphasis in original; footnote omitted). These conclusions rested in part on the following relevant portion of Florida's Evidence Code:
Upon an inquiry into the validity of a verdict or indictment, a juror is not competent to testify as to any matter which essentially inheres in the verdict or indictment.
§ 90.607(2)(b), Fla. Stat. (1987). The published notes accompanying this provision reveal that it codified the relevant holding of McAllister Hotel, Inc. v. Porte, 123 So.2d 339, 344 (Fla. 1959), which stated in pertinent part:
[T]he law does not permit a juror to avoid his verdict for any reason which essentially inheres in the verdict itself, as that he "did not assent to the verdict; that he misunderstood the instructions of the Court; the statements of witnesses or the pleadings in the case; that he was unduly influenced by the statements or otherwise of his fellow-jurors, or mistaken in his calculations or judgment, or other matter resting alone in the juror's breast."
Id. (quoting Wright v. Illinois & Miss. Tel. Co., 20 Iowa 195, 210 (1866)).
The distinction drawn by the cases quoted above is between overt prejudicial acts, and subjective impressions or opinions of jurors. To the extent an inquiry will elicit information about overt prejudicial acts, it is permissible; to the extent an inquiry will elicit information about subjective impressions and opinions of jurors, it may not be allowed.
In the present case, Baptist Hospital alleges that the affidavits disclose a possibility of juror misconduct consisting of (a) an agreement by jurors to return a verdict out of sympathy for the brain-damaged child no matter what the evidence showed, and (b) the improper reliance on nonrecord evidence that Baptist Hospital had insurance covering the present liability.
The affidavits, quoted in pertinent part above, do not support these conclusory statements. The factual matters in the affidavits allege nothing more than the *100 purported opinions of two jurors about the reason the verdict was reached, not statements by jurors that any type of agreement was reached to disregard their oaths and ignore the law. Both sympathy for a child and the reasons why jurors reached a particular verdict clearly are subjective impressions or opinions that are not subject to judicial inquiry.
Nor do these affidavits establish that jurors received nonrecord evidence. Indeed, the record strongly supports the conclusion that jurors inferred the existence of applicable insurance based on the testimony of Baptist Hospital's own risk manager, who told the jury one of his responsibilities was to "make sure we have insurance" for matters that may result in liability. This was a door that Baptist Hospital opened, and Baptist Hospital now must live with whatever assumptions or inferences jurors chose to draw from this evidence. One such reasonable assumption is that Baptist Hospital held insurance policies covering the present liability. We thus are bound by the district court's conclusion that "no facts were brought before the jury which were not introduced in evidence." Maler, 559 So.2d at 1162.
Accordingly, as a matter of Florida law, the affidavits failed to state a legally sufficient reason to interview jurors. Hamilton. In reaching this conclusion we are mindful that some of the language in our recent opinion in Hamilton may be read to support a contrary conclusion. In Hamilton, we held that a trial court did not err in conducting an inquiry even though the alleged misconduct was of a type highly unlikely to indicate any prejudice whatsoever: a juror had taken two automobile magazines into the jury room. Hamilton, 574 So.2d at 130-31. The Hamilton opinion stated that an inquiry is permissible whenever the court entertains "serious doubt" as to the existence of juror misconduct, provided the inquiry is limited to permissible questions. Obviously, the misconduct alleged in Hamilton was less serious than that alleged in the present case. Id.
The Hamilton opinion, however, made clear that it would have reached the same result whether or not the trial court had conducted an inquiry of jurors. Thus, Hamilton did not turn on the question of when an inquiry is permissible, unlike the present case.
We now clarify the meaning of Hamilton in light of the strong public policy against allowing litigants either to harass jurors or to upset a verdict by attempting to ascertain some improper motive underlying it. We hold that an inquiry is never permissible unless the moving party has made sworn factual allegations that, if true, would require a trial court to order a new trial using the standard adopted in Hamilton.[1]
Finally, our opinion in no sense should be construed as condoning any process by which jurors actually enter into an agreement to disregard the law applicable to a case. Any actual, express agreement between two or more jurors to disregard their oaths and instructions constitutes neither subjective impression nor opinion, but an overt act. It thus is subject to judicial inquiry even though that inquiry may not be expanded to ask what impressions or opinions motivated jurors to enter into the agreement in the first instance. Hamilton. This is true, as the court below noted, Maler, 559 So.2d at 1162, whether the agreement is to decide the case by aggregation and average, by lot, by game or chance, by any other artifice or improper manner, or by a simple overt agreement to ignore the law and the court's instructions. Russ v. State, 95 So.2d 594, 600 (Fla. 1957); Marks v. State Road Dep't, 69 So.2d 771, 775 (Fla. 1954).
Similarly, any receipt by jurors of prejudicial nonrecord information constitutes an overt act. Accordingly, it is subject *101 to judicial inquiry even though that inquiry may not be expanded to ask jurors whether they actually relied upon the nonrecord information in reaching their verdict. Hamilton. As Judge Hubbart correctly suggested in the opinion under review, the case law on this topic allows inquiry only into objective acts committed by or in the presence of the jury or a juror that might have compromised the integrity of the fact-finding process. Maler, 559 So.2d at 1162 (citing Russ, Marks); accord Hamilton.
In the present case, however, the sworn affidavits upon which the motion was based do not allege this type of impropriety. We agree with Judge Hubbart's observation that
no other inquiries of the jury could be properly framed [based on the present record] because the affidavits are solely concerned with matters which essentially inhere within the jury verdict.
Maler, 559 So.2d at 1162. Accordingly, the trial court abused its discretion in authorizing any inquiry of the jurors. For the reasons above, the order quashing the trial court's determination of this matter is approved.[2]
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, BARKETT and GRIMES, JJ., concur.
KOGAN, J., concurs in part and dissents in part with an opinion, in which HARDING, J., concurs.
KOGAN, Justice, concurring in part, dissenting in part.
I concur in the majority's continued adherence to the standard of review for jury interviews set forth in State v. Hamilton, 574 So.2d 124 (Fla. 1991). However, I dissent from the majority's decision  so soon after Hamilton was released  to effectively overrule Hamilton's threshold standard for determining when a jury interview is permissible in the first instance. As the majority notes, we approved the interview in Hamilton even though the facts of that case were less serious than those at hand. Accordingly, we should allow an interview here.
In reaching this conclusion, I do not disagree with the majority's distinction between overt acts (which can be the subject of an interview) and subjective thought processes (which cannot). Clearly, Hamilton and all the case law upon which it relied have adhered to this distinction.
However, I am not so convinced that these two categories always come in distinct packages. It is a human tendency to express in subjective terms matters that actually are based on objective fact. This may well have happened in the present case when the jurors spoke with Baptist Hospital's attorney. Certainly, I agree with the majority that sympathy for a child and the reasons why jurors reached a particular verdict clearly are subjective impressions or opinions that are not subject to judicial inquiry. However, to my mind, that is not an end of the matter.
The possible juror misconduct alleged by Baptist Hospital also involves separate elements that clearly are not within the realm of subjective impressions or opinions. While the affidavits do not expressly allege the existence of an improper agreement among jurors, they at least are entirely consistent with the conclusion that such an agreement existed among several of the jurors. Moreover, these same affidavits are at least consistent with the conclusion that jurors may have received nonrecord information about Baptist Hospital's level of insurance. Accordingly, I would quash the opinion of the district court and permit a very limited interview of the jurors to ascertain whether these two specific improprieties occurred.
*102 In so doing, I would require that jurors only be asked whether an overt agreement existed to disregard their oaths and instructions, and whether any nonrecord evidence about insurance was received. Follow-up questions would be limited exclusively to these two categories in the same way testimony on cross-examination is limited to subjects raised during direct examination. Throughout this process, jurors could be questioned only about objective acts occurring in the presence of the jury or any juror, not subjective opinions or the reasons why particular decisions were made.
I do not share the majority's view that this very limited type of interview will undermine the sanctity of the jury process by condoning harassment of jurors or second-guessing of verdicts. The limited scope of inquiry I would authorize would not permit these evils to occur, and I am fully confident in the ability of this trial court to properly control the way these litigants interact with the jurors. Moreover, the slight inconvenience that would be caused here is outweighed by the need to guarantee the integrity of the fact-finding process  a goal the majority itself lauds.
Finally, I agree with the majority's conclusion that the questions framed by the trial court are improper. Their phrasing clearly elicits information about subjective matters. However, I believe the questions can be rephrased to eliminate the impropriety, in the manner I have stated above.
In all other respects, I concur in the majority opinion.
HARDING, J., concurs.
NOTES
[1] Under this standard, the moving party first must establish actual juror misconduct in the juror interview. Once this is done, the party making the motion is entitled to a new trial unless the opposing party can demonstrate that there is no reasonable possibility that the juror misconduct affected the verdict. Hamilton, 574 So.2d at 129 (quoting Paz v. United States, 462 F.2d 740, 745 (5th Cir.1972)).
[2] We approve the result reached by the conflict case, Preast v. Amica Mutual Insurance Co., 483 So.2d 83 (Fla. 2d DCA 1986), solely to the extent that it found the award of damages illegal because jurors had decided the amount by lot. The opinion in Preast otherwise is disapproved, because the Second District's reasoning suggests that a new-trial order may be based on the thoughts, feelings, opinions, and subjective impressions of jurors.