W. SHARP, Judge,
dissenting.
In violation of the court’s express instruction that it should totally disregard any question or reference to DeVoney’s having had a speeding ticket for going twenty miles per hour over the posted speed limit, a year prior to his trial for DUI, at least two jurors discussed that incident during the jury deliberations. One juror used the speeding ticket reference as a ground to assert DeVoney had a “bad driving record” in order to pressure the other into agreeing to a guilty verdict. The foreperson of the jury testified that another juror told him during their deliberations:
He said, well, you know, I could sort of lean toward your thinking except for the *159 fact that, whether you like it or not, I can’t forget the fact that he had a prior bad driving record. He was quoted as driving twenty miles an hour over the speed limit. Do you — if you continue to vote not guilty, do you want to turn this man loose knowing that he’s got a DUI now and a prior record? Do you want to turn him loose so as to kill somebody else?
[[Image here]]
And then the statement came up, do you want to waste our whole week here and vote not guilty? After a lot of meditation, I voted guilty, and at this point in time I don’t know why I did. I wish there was some legal way to change my mind, and I apologize to the court for taking up your time and being a poor juror. I just don’t know what else to tell you.
I agree with the trial court that appellant sufficiently showed that the jury considered the speeding ticket contrary to the court’s instruction; there was a reasonable possibility that its consideration was prejudicial and not harmless, given the “pressured” juror’s lament that he regretted his verdict; and the only remedy, under such circumstances, is to grant a new trial. Thus, I would affirm.
The issue here is whether the failure of the jury to follow the court’s instruction “inheres in the verdict” so that inquiry is foreclosed. In balancing the rights of litigants to a fair trial and the privacy rights of jurors and the need for finality of verdicts, the rule has emerged that courts may not inquire into the subjective decision-making process of the jury:
[T]he law does not permit a juror to avoid his verdict for any reason which essentially inheres in the verdict itself, as that he ‘did not assent to the verdict; that he misunderstood the instructions of the Court, the •statements of the witnesses or the pleadings in the case; that he was unduly influenced by the statements or otherwise of his fellow-jurors, or mistaken in his calculations or judgment, or other matter resting alone in the juror’s breast.’
Powell v. Allstate Insurance Co., 652 So.2d 354, 356, n. 3, quoting McAllister Hotel, Inc. v. Porte, 123 So.2d 339, 344 (Fla.1959). See § 90.607(2)(b), Fla.Stat. (upon an inquiry into the validity of a verdict or indictment, a juror is not competent to testify as to any matter which essentially inheres in the verdict or indictment).
Inquiry is limited to matters “extrinsic” to the verdict or “overt acts” which might have prejudicially affected the jury in reaching its verdict. Powell; Baptist Hospital of Miami, Inc., 579 So.2d 97 (Fla.1991); State v. Hamilton, 574 So.2d 124 (Fla.1991); Snook v. Firestone Tire & Rubber Co., 485 So.2d 496 (Fla. 5th DCA 196). Extrinsic matters and overt acts include the receipt by the jury of prejudicial nonrecord information. Baptist Hospital of Miami Inc.
For example, in Snook v. Firestone Tire and Rubber Company, 485 So.2d 496 (Fla. 5th DCA 1986), this court held that the plaintiff in a personal injury action was entitled to have the jurors interviewed because he sufficiently established that the verdict may have been improperly influenced by considerations outside the record. Snook had sued for damages allegedly caused by a defective tire manufactured by Firestone. The jury returned a verdict for Firestone. Snook then filed a motion for new trial and for leave to interview jurors, alleging that one juror had visited a tire installation garage and had inquired as to whether the accident could have occurred in the manner in which Snook claimed that it had. The juror then reported the results of his independent investigation to the other jurors. This court held that these allegations were sufficient to support a motion to interview the jury:
In reaching a verdict, jurors must not act on special or independent facts which were not received in evidence. Edelstein v. Roskin, 356 So.2d 38 (Fla. 3d DCA 1978). In this instance, the juror was alleged to have deliberately disregarded the court’s instructions not to discuss the case and to base the verdict solely on evidence presented during trial by not only consulting with someone else, but by also reporting to the other jurors that the testimony they had received was inaccurate. Had this happened and been discovered during the trial, it would certainly have justified the court in declaring a mistrial because the *160 effect is that an unsworn and unqualified witness had given opinion testimony as to whether the accident occurred in the manner that Snook had testified, (footnote omitted)
485 So.2d 499. See also Bickel v. State Farm Mutual Automobile Ins. Co., 557 So.2d 674 (Fla. 2d DCA 1990) (jury’s misconduct in driving to the scene of the accident and performing his own experiment sufficient to warrant jury interview).
In City of Winter Haven v. Allen, 589 So.2d 968 (Fla. 2d DCA 1991), rev. denied, 599 So.2d 654 (Fla.1992), the court affirmed the trial judge’s order granting the plaintiff a new trial. The plaintiff in that case was the wife of a slain deputy sheriff who filed suit against the City of Winter Haven, claiming that one of its police officers negligently shot her husband. Apparently, one juror informed some of the other jurors that the plaintiff was receiving the proceeds from an earlier wrongful death action, the result of which had not been disclosed to the jury. The court concluded that the juror’s disclosure of the prior verdict and its impact on the present verdict was an overt prejudicial act which authorized a new trial.
Here the prosecutor questioned a witness about the fact that DeVoney had a prior speeding ticket. This question and answer were ruled inadmissible and the jury was specifically instructed to disregard any consideration of the ticket. Since the reference to the ticket was ruled inadmissible, it is equivalent to a matter “outside the record.” If the receipt of information regarding outside experiments or even references to dictionaries and medical books require a reversal and a new trial,[1] then consideration of inadmissible evidence that defendant had a prior speeding ticket in a DUI trial is sufficiently prejudicial to warrant a new trial. See Weber v. State, 501 So.2d 1379 (Fla. 3d DCA 1987) (defendant was entitled to a new trial where jury learned from an extrinsic source that he had been previously convicted of and sentenced to prison for the crime for which he was on trial). See also Bailey v. State, 219 GaApp. 258, 465 S.E.2d 284 (1995) (trial judge’s inability to disregard evidence he ruled inadmissible constituted a manifest necessity for a mistrial).
Cases from other jurisdictions support the conclusion that receipt of prejudicial outside information is sufficient to warrant a new trial. For example, in State v. Migliaro, 28 Conn.App. 388, 611 A.2d 422 (1992), the defendant was convicted of two crimes related to the death of his twelve-week-old daughter. The evidence at trial was in conflict as to whether the child was a victim of abuse or natural causes. One of the jurors apparently brought two medical books with her to the trial. The court did not investigate as to whether there was any potential jury misconduct.
On appeal, the defendant argued that his constitutional rights were violated when the court failed to conduct an inquiry into whether any of the jurors had relied on the medical books and when the court failed to declare a mistrial because of the potential juror misconduct. In resolving this issue, the court noted that the right to a jury trial guarantees the accused the right to a fair trial by a panel of impartial jurors. A necessary component to the right to an impartial jury is the right to have the jury decide the case solely on the basis of the evidence and arguments given to them in court after proper instructions on the law. Consideration of extrinsic evidence is jury misconduct and is sufficient to violate the constitutional right to trial by an impartial jury.
In Dickson v. Sullivan, 849 F.2d 403 (9th Cir.1988), the Court of Appeals reversed a murder conviction and remanded for a new trial based on the reasonable possibility that an extra-judicial statement influenced the state court verdict. In that case, the owner of a tavern was murdered and robbed. Circumstantial evidence linked Dickson to the crime. Dickson admitted that he had checked the tavern cash register for money and had stolen the victim’s car but denied that he had murdered the victim. The jury *161 found Dickson guilty as charged. During a juror interview several days later, the court found that a deputy sheriff escorting the jurors to and from the courtroom had made a statement to two jurors to the effect that Dickson “had done something like this before.” The court also found that the statement had been made between two to six days before the jury retired for deliberations and that neither of the jurors had discussed the statement among themselves or with other members of the jury. The court found that the two jurors had followed its instructions limiting the use of prior convictions and directing them to make their decision exclusively on the evidence at trial.
The Court of Appeals noted that a defendant is entitled to a new trial when the jury obtains or uses evidence which has not been used during trial if there is a reasonable possibility that the extrinsic material could have affected the verdict. Here, there was a direct and rational connection between the statement that Dickson “had done something like this before” and the conclusion that he had committed the same crime again. The deputy’s comment was thus directly related to a material issue in the case and was highly inflammatory. This is especially true where the defendant was deprived of the opportunity to rebut the evidence, to discuss its significance in argument to the jury or to take other steps to lessen its prejudicial impact. The court found that the judge’s instruction to the jury to ignore the defendant’s prior convictions in determining whether he committed the offense being tried “is to ask human beings to act with a measure of dispassion and exactitude well beyond mortal capabilities.” The court also found irrelevant the fact that the prejudicial information was communicated to only two jurors. The court noted that a defendant is entitled to a jury of impartial jurors and that if only one juror were unduly biased or improperly influenced, the defendant was deprived of his Sixth Amendment right to a fair trial.
Here the jury in effect received “extrinsic” evidence that DeVoney had a prior speeding ticket. The jury discussions indicate that the jury foreperson was being pressured to vote guilty in this DUI trial because of the ticket, a matter which the jury was specifically instructed not to consider. In Baptist Hospital, the Florida Supreme Court noted that any actual, express agreement between two or more jurors to disregard their oaths and instructions constitutes “an overt” act and is subject to judicial inquiry. This is true whether the agreement is to decide the case by aggregation and average, by lot, by game or chance, by any other artifice or improper manner, or by simple overt agreement to ignore the law and the court’s instructions. 579 So.2d at 100.
Here, the jury discussions suggest that the jurors, or at least one juror and the foreperson, tacitly agreed to disregard the court’s instruction and considered DeVoney’s prior ticket. In my view, this is the kind of overt act which should permit the court to inquire into the jury verdict, and set it aside.

. See Smith v. State, 95 So.2d 525 (Fla. 1957) (presence of a dictionary in a jury room required reversal of the verdict); State v. Migliaro, 28 Conn.App. 388, 611 A.2d 422 (1992) (trial court’s duty to investigate potential juiy misconduct was triggered in prosecution for criminally negligent homicide when trial court became aware that juror brought medical books into the courthouse where medical evidence was critical to the jury's resolution of the cause of the victim's death).