POLEN, C.J.
In this medical malpractice action, Ray-na Myron, a minor, by and through her parents and natural guardians, Sharon Brock and Herbert B. Myron, as well as Brock and Myron individually, appeal after they sustained a defense verdict in a six-month jury trial. On the evidentiary issues raised in this appeal, we affirm.
This case deals with the defendants’ alleged failure to diagnose Rayna with meningitis. It is also the fourth time before this court, the second time on direct appeal. In 1994, the case was tried over four months before a jury, which found in favor of the defendants. On direct appeal, this court reversed and remanded for a new trial. Myron ex rel. Brock v. Doctors Gen. Hosp., Ltd., 704 So.2d 1083 (Fla. 4th DCA 1997).
On remand, the trial court entered a case management order. One month before the expert witness disclosure deadline, and four months after the case management order was entered, plaintiffs moved for an extension of time in an attempt to list additional experts. The court denied the motion. Plaintiffs filed two separate supplemental expert witness disclosures right before trial was initially supposed to begin.[1] On the defendants’ motion to strike these experts, the court ordered plaintiffs to move for leave to file the supplemental disclosure and reserved ruling. Thereafter, plaintiffs filed a “Motion to Allow Additional Disclosures of Expert Witnesses and Memorandum of Law in Support Thereof.”
A hearing was later held on both parties’ motions. Plaintiffs’ counsel argued that additional experts were needed as back-up in case another witness was not available. The court denied their motion and granted the defense’s motion to strike the additional experts. It noted that the parties had agreed to the pretrial order and that these experts could have been named in a timely fashion. The court’s denial, however, was without prejudice in case an emergency did arise. This order notwithstanding, plaintiffs filed a third supplemental disclosure of expert witnesses. On defense motion, the court struck them.
Before retrial began, the court held that no party could express an opinion regard *668 ing the intent or identification of a person responsible for the shaken baby syndrome.[2] It also held that all statements or inferences suggesting responsibility for shaken baby syndrome by Rayna’s mother, Mrs. Brock, or her babysitter, Lecia Tins-ley, were prohibited. However, at retrial, defense counsel asked one of plaintiffs witnesses, Dr. Cullen, about a record which indicated Rayna was perhaps suffering from shaken baby syndrome. The record, which was placed on a large poster-board and exhibited before the jury, also indicated that there was “some form of litigation ... involving the babysitter and her boyfriend and Rayna is represented by Sheldon Schlesinger.”
Plaintiffs then moved for a mistrial on the ground that the defense violated the pretrial order prohibiting references to this matter. Plaintiffs essentially argued that the report suggested that even the plaintiffs’ attorney believed Rayna’s injuries were the result of the babysitter’s actions and not the defendants’. The court, finding the reference unintentional, denied the motion but admonished defense counsel. The court further instructed the jury to disregard any statement regarding litigation against the babysitter or boyfriend, and also instructed it “as a matter of fact and law there was never any litigation involving” them.
During voir dire, juror Rollo stated he wanted to serve on the jury even though trial would cause a hardship as to his income earned as a commission salesman. Later, during trial, Rollo asked the judge to be removed as a juror because he was losing too much money. The court told him trial would be over in three weeks or so. Rollo said if it lasted longer than that it would make his life “very difficult.” Thereafter, he showed the court a letter from his employer noting that he was losing his draw. The court called his employer and arranged that Rollo would be paid through the end of the month (January, 2000). Rollo expressed he wanted to remain a juror. Rollo later served as the jury foreman.
After listening to the many experts presented by both sides, the jury rejected the plaintiffs’ contention that the cause of Ray-na’s injuries was the defendants’ failure to properly and timely diagnose meningitis. Plaintiffs then filed a motion for new trial, which was denied.
Approximately six weeks after the trial had ended, Rollo’s employer fired him. Three weeks thereafter, Rollo’s lawyer contacted both sides and notified them that Rollo was suing his employer. Plaintiffs then filed a verified motion to interview Rollo.
The trial court allowed the interview to take place. However, it prohibited questioning into Rollo’s thought process and other matters inhering in the verdict. Rollo testified he was never threatened with termination while he served on the jury. Rollo also testified that he was not influenced by these or other job-related personal events while he was a juror. The court denied plaintiffs a new trial based on any alleged misconduct by Rollo. This appeal followed.
WHETHER THE TRIAL COURT ERRED BY DENYING PLAINTIFF’S MULTIPLE REQUESTS OYER A ONE-YEAR PERIOD TO ADD EXPERT WITNESSES
Appellants first argue the court erred in denying their multiple requests to add expert witnesses. We disagree. This was the second trial and was to take place almost ten years after the subject inei- *669 dents occurred; the parties had agreed to the pretrial order; and the plaintiffs had had four months to revise their previous expert lists. Even though trial ended up being delayed months due to Judge Fran-za’s death, such delay did not excuse the plaintiffs from compliance with the pretrial order. In any event, the only reason the plaintiffs gave at trial for wanting to add more experts is that they wanted “backups” in the event of an emergency.[3] No such emergency took place during retrial.[4] Accordingly, we affirm. See Binger v. King Pest Control, 401 So.2d 1310 (Fla.1981)(holding a trial court may exclude the testimony of a witness whose name was not disclosed in accordance with a pretrial order); but cf. Keller Indus. v. Volk, 657 So.2d 1200 (Fla. 4th DCA 1995)(reversing where trial court excluded defendant’s only witness in products liability case).
WHETHER THE TRIAL COURT ERRED BY FAILING TO GRANT A MISTRIAL WHEN DEFENDANT IMPROPERLY PUBLISHED A HIGHLY PREJUDICIAL STATEMENT
Appellants then argue the court should have granted a mistrial when defense counsel elicited the contents of Dr. Cullen’s medical report, suggesting that the cause of Rayna’s injuries was shaken baby syndrome and that either Lecia or her boyfriend was responsible. While the decision to grant a mistrial falls within the court’s discretion, a mistrial should not be granted unless an absolute legal necessity to do so exists. See Ratley v. Batchelor, 599 So.2d 1298, 1302 (Fla. 1st DCA 1991).
Here, the trial court found, albeit implicitly, that a mistrial was not legally necessary. The subject medical record was introduced to impeach Dr. Cullen after he testified on cross that he did not know the cause of Rayna’s injuries. The improper reference contained within that record to Lecia’s culpability was found to be brief and inadvertent, and we hold the court’s specific instruction to the jury cured whatever taint may have resulted. See Leyva v. Samess, 732 So.2d 1118 (Fla. 4th DCA 1999)(holding that not every violation of an order in limine warrants a new trial).
WHETHER THE TRIAL COURT ERRED IN DENYING PLAINTIFFS A NEW TRIAL BASED ON JUROR MISCONDUCT
Florida Rule of Civil Procedure 1.431(h) governs motions for new trial and for juror interview. This rule provides, in pertinent part,
A party who believes that grounds for legal challenge to a verdict exist may move for an order permitting an interview of a juror or jurors to determine whether the verdict is subject to the challenge....
Consistent with the foregoing rule, the supreme court in Baptist Hospital of Miami, Inc. v. Maler, 579 So.2d 97 (Fla.1991), set forth the test courts should employ in determining when post-trial questioning of a juror is warranted. Specifically, a jury inquiry is permissible only when “the moving party has made sworn factual allegations that, if true, would require a trial court to order a new trial[.]” Id. at 100.
*670 Once the movant is granted the interview, he “must establish actual juror misconduct.” Id. at 100 n. 1. During the interview, however, the juror may not testify “as to any matter which essentially inheres in the verdict or indictment.” § 90.607(2)(b), Fla. Stat. (1999). Specifically,
it would be improper, after a verdict is rendered, to individually inquire into the thought processes of a juror to seek to discover some bias in the juror’s mind ... as a possible motivation for that particular juror to act as she did. Those innermost thoughts, good and bad, truly inhere in the verdict. But when appeals to [such] bias are made openly among the jurors, they constitute overt acts of misconduct.
Powell v. Allstate Ins. Co., 652 So.2d 354, 857 (Fla.1995). In any event, if the mov-ant establishes such misconduct, the court must order a new trial unless the opposing party can show that the misconduct was harmless. Maler, 579 So.2d at 100 n. 1.
Notwithstanding that the allegations in the verified motion did not support that the plaintiffs were entitled to a juror interview in the first place, they were unable to establish the Maler factors in the interview. The record reflects that Rollo never claimed he could not serve competently as a juror, nor that his extraneous concerns would bias his judgment. Rollo even volunteered that he was not influenced by the aforementioned concerns at any point in these proceedings. This admission causes plaintiffs’ argument here to fail.
AFFIRMED.
STEVENSON and TAYLOR, JJ., concur.

. Retrial was supposed to have been before Senior Circuit Judge Arthur Franza, but he passed away before trial could commence. Retrial, therefore, was delayed.

. The defense claimed Rayna’s injuries were the result of child abuse, not meningitis.

. Plaintiffs have raised new arguments for the first time on appeal as to why they needed additional experts. These arguments were not preserved. See W.R. Grace & Co.-Conn. v. Dougherty, 636 So.2d 746 (Fla. 2d DCA 1994)(holding appellate court may consider objections only on grounds specifically stated at trial).

. We disagree that impeachment of one of the plaintiffs’ experts constituted an unanticipated emergency.