SUAREZ, J.
 

 Robin Simon, D.O. (“Dr. Simon”), South Florida Orthopedics, Inc., and Health-South Corporation appeal a final order granting a new trial after a jury verdict and juror interview. Plaintiffs (“Maldona-dos”) cross-appeal the denial of the admission of a
 
 Fabre
 

 [1]
 

 defendant on the verdict form and the denial of cross-examination of Dr. Simon on her medical background. We reverse the order granting a new trial and affirm the issues on cross-appeal.
 

 
 *10
 
 The Maldonados brought an action against Dr. Simon and her employers, South Florida Orthopedics, Inc. and HealthSouth Corporation, alleging negligent failure to diagnosis and treat their minor daughter’s cancer after a broken femur. On the first day of jury selection, the potential jurors filled out juror questionnaires.
 
 [2]
 
 The trial lawyers and judge asked individual jurors about some of their answers.
 
 [3]
 
 Juror Subaran was placed on the jury without objection. The jury returned a verdict for the defense finding that there was no negligence on the part of Dr. Simon that was a cause of injury. Ten days after the verdict, on March 28, 2008, the Maldonados filed a motion for new trial on grounds that the trial court erred in not allowing the Maldonados to impeach Dr. Simon on her background and training and on grounds including that the trial court erred in permitting the defense to argue that the subsequent treating physician was negligent in the care and treatment of the minor plaintiff. This post trial motion did not allege any factual bases for a juror interview nor did it request such an interview. On March 31, 2008, more than ten days after the jury verdict, the Maldonados filed for the first time a motion to interview jurors alleging that juror Subaran had failed to disclose that she previously had been involved in an automobile accident and had concealed material facts relevant to the issues in the case. The motion was filed along with an affidavit of plaintiffs’ counsel stating that it was his “good-faith belief’ that Subaran was involved in an automobile accident and that a resulting claim was “likely” made against her. The Maldonados later filed a first supplemental motion to interview jurors alleging that “it would appear that juror Subaran ... may have been a named party defendant to a number of prior lawsuits,” and attached a court docket to the motion. , The trial court granted the motion to interview juror Subaran, limiting inquiry into the answers on the questionnaire and voir dire on her past involvement as a party to lawsuits and whether any claims had been made against her.
 
 [4]
 
 
 *11
 
 The trial court held a hearing on the motion to interview jurors and ordered a new trial on the basis of Subaran’s alleged non-disclosures. Dr. Simon, South Florida Orthopedics, Inc., and HealthSouth Corp. appeal the granting of a new trial.
 

 Dr. Simon raises two issues on appeal. Dr. Simon claims that the affidavit filed by the Maldonados in support of the motion to interview jurors was factually insufficient, and, as such, the trial court erred in granting the motion to interview, and, even if sufficient, the trial court erred in ordering a new trial as the alleged undisclosed claims were not relevant or material to the issues at trial and did not constitute concealment. Second, Dr. Simon contends that the trial court abused its discretion in ordering a new trial as the Maldonados’ motion was untimely filed and good cause was not shown for the late filing.
 

 We agree with the Appellants that the affidavit was not factually sufficient to require the juror interview. A post trial juror interview “is never permissible unless the moving party has made sworn factual allegations that, if true, would require a trial court to order a new trial.”
 
 Baptist Hosp. v. Maler,
 
 579 So.2d 97, 100 (Fla.1991). In considering whether to authorize inquiry into alleged juror misconduct, the trial court must determine exactly what type of information will be elicited from the jurors.
 
 Maler,
 
 579 So.2d at 97. This rule rests on a policy of preventing litigants or the public from invading the privacy of the jury room.
 
 Maler,
 
 579 So.2d at 99. The affidavit submitted in support of the motion for juror interview was based factually on speculation, alleging only that there was a “possibility” of juror misconduct. Such speculation is not sufficient to warrant the trial court to order a juror interview.
 
 Albertsons, Inc. v. Johnson,
 
 442 So.2d 371, 372 (Fla. 2d DCA 1983) (holding that allegations in a motion for juror interview cannot be “bottomed on mere conclusory statements based on speculation and surmise that, if interrogated, the jurors might have something to say that would be material to whether or not the court should award a new trial”). The allegations must be certain as to the proof required to substantiate nondisclosure or concealment relevant to the facts at issue.
 
 De La Rosa v. Zequeira,
 
 659 So.2d 239 (Fla.1995).
 

 Even if the affidavit were sufficient to warrant the interview, the facts revealed at the Subaran interview were not relevant or material to the issues to be tried and, therefore, a new trial should not have been granted. Under
 
 De La Rosa,
 
 the party seeking a new trial on the basis of juror non-disclosure has the burden of establishing entitlement to it. In determining whether a juror’s non-disclosure of information during voir dire warrants a new trial, courts generally have utilized a three-part test. First, the complaining party must establish that the information is relevant and material to jury service in the case; second, that the juror concealed the information during questioning; lastly, that the failure to disclose the information was not attributable to the complaining party’s lack of diligence.
 
 See De La Rosa,
 
 659 So.2d at 241. Appellate courts have reversed for juror interviews or new trials where a potential juror has failed to disclose prior litigation history or where other information relevant to jury service was not disclosed. But the mere possibility that a juror was involved in prior claims does not show in and of itself that his point of view was affected so as to deprive the defendant of a fair and impartial trial. Here, it cannot be said that Subaran’s failure to disclose prior litigation deprived the Maldonados of a fair and impartial trial. It cannot be said that the allegedly undisclosed legal claims — two of which
 
 *12
 
 were liens, two were minor-collection related suits and two were mortgage foreclosures — were relevant or material to this case. The hospital lien was filed more than eleven years before trial and it was never shown that it was against Subaran individually. A contractor roof repair lien was resolved without litigation or involvement of attorneys. A six-year-old subro-gation action brought against Subaran’s husband without her knowledge, as well as an AT & T bill with a stipulation for payment, were not material and relevant to this litigation. The foreclosure actions did not show that service was effected or that they were filed until after jury selection in this case. Moreover, another juror, who disclosed that he was involved in an automobile accident which resulted in a lawsuit and who identified several other lawsuits that he was involved in, was seated on the jury. Therefore, the first prong of
 
 De La Rosa,
 
 the requirement of showing that any alleged disclosure was material and relevant, has not been met.
 

 Likewise, the elements of concealment and due diligence have not been demonstrated. Juror Subaran answered on her juror questionnaire that she had made a legal claim. It was never shown that the information sought as to whether there had been any legal claims against her or her family had been asked for directly on voir dire to explain the answer she had given on the juror questionnaire.
 
 [5]
 
 It was never shown that juror Subaran was aware of any possible liens, subrogation or foreclosure actions because they had been dismissed for lack of service or were brought against her husband. Because there was no demonstration that these questions had been asked prior to the motion for juror interview, or that juror Subaran had failed to answer them directly, the element of concealment has not been demonstrated.
 
 See Parra v. Cruz,
 
 59 So.3d 211 (Fla. 3d DCA 2011) (holding that alleged undisclosed prior litigation history not squarely asked for was not concealed, and because not shown relevant to case, does not warrant juror interview). Similarly, it has not been shown that lack of diligence on the part of the Maldonados in filing the motion for juror interview was attributable to the alleged failure to disclose the information.
 

 Setting aside the arguments of Dr. Simon that the motion to interview was not timely filed and that good cause for the late filing was not shown,
 
 [6]
 
 we find that the motion to interview jurors and accompanying affidavit failed to state a legally sufficient reason to conduct a juror interview, as the motion was based upon conclusory allegations and on the mere possibility of juror misconduct without supporting docu
 
 *13
 
 mentation or a direct showing that the juror had failed to answer truthfully or disclose information in response to direct questions on voir dire.
 
 Parra v. Cruz,
 
 59 So.Sd 211.
 

 For these reasons, we find that the Mal-donados failed to meet their burden of showing that nondisclosure entitled them to a new trial, and we hold that the trial court abused its discretion in ordering a juror interview and a new trial based on the alleged non-disclosure of a juror.
 

 The Maldonados cross-appeal the trial court’s ruling excluding cross examination trial testimony of Dr. Simon to show that she received low rating evaluations during her residency. The proffered evidence also showed that, as a result of the ratings, the doctor brought a gender discrimination lawsuit. The trial court ruled that the probative value of the low ratings did not outweigh the potential harmful effect of the testimony concerning the discrimination suit and the confusion that such evidence would have brought to the overall trial. It must be shown that the probative value of admitting evidence of the training and residency of Dr. Simon, outweighs the prejudice which would have resulted in the admission of evidence concerning the gender discrimination lawsuit brought by Dr. Simon in response to her evaluations.
 
 See Sims v. Brown,
 
 574 So.2d 131 (Fla.1991). The collateral issue of a gender discrimination lawsuit, as an explanation of the doctor’s performance in training and residency, would have resulted in such prejudice outweighing the probative value of the admission of the evidence and, therefore, the trial court was correct in refusing to allow cross examination on the training and residency of the doctor at trial.
 

 The next issue on cross-appeal is whether evidence of the subsequent, treating doctor’s alleged negligence was admissible to show the cause of the plaintiff’s injuries. Such evidence is admissible unless the plaintiff can prove that the original defendant, Dr. Simon, was liable as a matter of law. If not, it is for the jury to decide whether both defendants were liable.
 
 See Barrios v. Darrach,
 
 629 So.2d 211 (Fla. 3d DCA 1993);
 
 see also Haas v. Zaccaria,
 
 659 So.2d 1130 (Fla. 4th DCA 1995). We find that the trial court was correct in admitting evidence of the subsequent, treating doctor’s alleged negligence, and was correct in allowing the subsequent, treating doctor as a
 
 Fabre
 
 defendant on the jury verdict form since it was not shown that Dr. Simon was liable as a matter of law. Accordingly, we affirm the trial court’s rulings on cross-appeal.
 

 Affirmed in part, reversed in part.
 

 [1]
 

 .
 
 Fabre v. Marin,
 
 623 So.2d 1182 (Fla. 1993).
 

 [2]
 

 . Juror Subaran answered yes to the question of whether she or a family member had ever made a legal claim. She followed the answer with a description of a claim she had made.
 

 [3]
 

 . The trial court questioned juror Subaran as to whether the fact that she worked for doctors in an emergency room would affect her ability to be fair. She responded that it would not. She revealed that she had made a claim against a doctor in 2005, but that it would not affect her ability to be fair and impartial. She admitted to having an accident at work where she dislocated a disk and was seen by a physician’s assistant and orthopedic specialist. Although dissatisfied with her treatment, she stated that she would be fair and honest in dealing with the case. Su-baran told plaintiffs' counsel that she had a medical assistant diploma and worked in the emergency room at Jackson South verifying insurance. She did not raise her hand when asked if there were any nurses, doctors or healthcare professionals in her close family.
 

 [4]
 

 .The plaintiffs submitted eleven exhibits, including a claim of lien by Homestead Hospital against the juror for hospitalization, and a report showing a possible accident or insurance subrogation claim in which she may have been involved. The juror disclaimed knowledge of the hospital lien, could not remember the accident and had no knowledge of the subrogation claim as it was handled by her husband. However, she admitted to being involved in an accident resulting in hospitalization for a fractured pelvis. She stated that she did not tell the court about these accidents during jury selection because she did not recall them at the time and she described them as being minor. Other documents introduced included a printout of a case in circuit court, a printout of a debt collection action, a mortgage foreclosure action filed after her jury service and other lawsuits against her husband, of which she had no knowledge and which were unserved or dismissed, a lien for roof repair, resolved by payment, and complaints against other individuals with the same last name.
 

 [5]
 

 . Juror Subaran answered on her juror questionnaire, "yes/no," in answer to whether anyone close to her worked as a doctor. The record does not show that she was ever asked directly if anyone close to her was a doctor. We reject the Maldonados' contention that Subaran concealed this information.
 

 [6]
 

 . Florida Rule of Civil Procedure 1.431(h) provides:
 

 (h) Interview of a Juror. A party who believes that grounds for legal challenge to a verdict exist may move for an order permitting an interview of a juror or jurors to determine whether the verdict is subject to the challenge. The motion shall be served within 10 days after rendition of the verdict unless good cause is shown for the failure to make the motion within that time.
 

 The Maldonados' motion was filed one day late requiring a showing of good cause for the late filing.
 
 See Beyel Bros. v. Lemenze,
 
 720 So.2d 556 (Fla. 4th DCA 1998) (holding that a motion to interview jurors filed three months after the return of the jury verdict was untimely; citing Fla. R. Civ. P. 1.530(b), which requires a motion for new trial to be served not later than ten days after the return of the jury verdict).