324 So.2d 652 (1975)
Eston BULLARD, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. V-159.
District Court of Appeal of Florida, First District.
December 3, 1975.
Rehearing Denied January 27, 1976.
*653 H. Randolph Fallin of Millar, Fallin & Lally, Jacksonville, for appellant.
Robert L. Shevin, Atty. Gen., and Gerry B. Rose, Asst. Atty. Gen., for appellee.
McCORD, Judge.
This is an appeal from appellant's conviction of assault with intent to commit murder in the first degree and aggravated assault and the imposition of sentence thereon. Two points have been raised by appellant on this appeal:
1. Whether the trial court erred in denying appellant's request for a mistrial, his request to poll jurors, and his request to interview jurors, all based on possible exposure of jurors to prejudicial publicity.
2. Whether appellant was denied a fair trial due to improper comment by the prosecutor in closing argument.
The trial by jury began on January 29, 1974, and lasted three days. The jury was not sequestered. News coverage of the trial was given by the Jacksonville Journal and the Florida Times Union. On January 31, appellant filed a written motion for mistrial citing and attaching certain news articles appearing in the two newspapers. Appellant contends here that two of the news articles were prejudicial to him in that one published in the evening edition of the Jacksonville Journal on January 30 characterized appellant as a "Westside police character" and a second article published in the morning Florida Times Union on January 31 contained the following paragraph:
"Well-known in police records and exconvict, Bullard has an arrest record dating back to 1960. However, juries found him innocent at his previous two trials."
With this motion for mistrial, appellant moved the court to poll the jury to determine whether or not members of the jury had been exposed to the articles. The court denied the motions stating that he had instructed the jury 15 times since the trial started not to read the newspapers. The court stated further:
"I'm not going to poll the jury. Every time we try a case we have  of any consequence, we have newspaper articles that go along in the daily paper. That's why I admonished them not to read the paper."
On the day following the trial, appellant's counsel gave notice to the court and to the prosecution pursuant to Canon EC 7-29 of the Code of Professional Responsibility *654 that he intended to interview the jurors to determine whether they were exposed to the news articles. The state then filed and served on appellant's counsel a motion to prohibit the unsupervised interview of the jurors and served upon him an order from the trial judge prohibiting any party or person from interviewing the jurors unless in the presence of the court. Thereafter, counsel for appellant filed a motion in the trial court to interview the jurors. The court then sought proposed questions for the jurors from both parties but thereafter denied appellant's motion.
Canon EC 7-29 of the Code of Professional Responsibility for Lawyers provides in pertinent part as follows:
"Both before and during the trial, a lawyer should avoid conversing or otherwise communicating with a juror on any subject, whether pertaining to the case or not. Subject to any limitations imposed by law it is a lawyer's right, after the jury has been discharged, to interview the jurors solely to determine whether their verdict is subject to any legal challenge provided he has reason to believe that ground for such challenge may exist, and further provided that prior to any such interview made by him or under his direction, he shall file in the cause, and deliver a copy to the trial judge and opposing counsel, a notice of intention to interview such juror or jurors setting forth in such notice the name of each such juror. The scope of the interview should be restricted and caution should be used to avoid embarrassment to any juror and to avoid influencing his action in any subsequent jury service." (Emphasis supplied)
We call particular attention to the words we have underlined in the above quotation from the Canon. Appellant's attorney had no authority to interview the jurors unless there was reason to believe that their verdict was subject to a legal challenge. Here, the only basis set forth by appellant's attorney for reason to believe that one or more of the jurors had violated their oath and disregarded the instructions of the court was that the two newspapers had wide circulation in the area and further that a conversation he had with the husband of one of the jurors after the jury had retired revealed that the husband had read one of the articles but his wife, the juror, had not. Such does not constitute a reasonable basis for belief that the verdict of the jury may be subject to a legal challenge. The trial court did not abuse its discretion in denying the motions.
As to appellant's second point, the only alleged improper and prejudicial comment made by the prosecutor during his closing argument to the jury to which appellant objected at the trial was the following:
"If you turn this defendant loose, if you find him not guilty, you will be letting a man loose, or anyone loose when all of his friends and hoods come in here and make a mockery of our whole system of justice. How can anyone ever be convicted if he brings in all these convicted friends and thieves in here to testify and lie for him every time he's ever charged?"
The court sustained appellant's objection to the statement and instructed the jury to disregard it and not consider it in arriving at their verdict. The record shows that a number of appellant's witnesses were convicts, though it does not show what crime or crimes they had committed. The prosecutor's statement was unquestionably improper and it was so recognized by the trial court. In view of the entire record in the case and the fact that the jury was instructed by the trial judge to disregard the statement, we do not consider it so prejudicial as to require reversal. We have considered the other comments of the prosecutor in his final argument complained of here but to which no objection was made at the trial and do not find them to constitute *655 fundamental error which would require reversal. See McPhee v. State, Fla. App., 254 So.2d 406 (1971).
Affirmed.
RAWLS, J., concurs.
BOYER, C.J., dissents.
BOYER, Chief Judge (dissenting).
I would remand the case for the purpose of allowing the jury to be polled to determine whether any juror was exposed during the progress of the trial to any media coverage. Over the centuries we have developed a very elaborate body of jurisprudence relative to admission and rejection of evidence. Unless evidence meets the standards established by that body of jurisprudence a jury may not be informed thereof. During the trial of every case, including the case sub judice, every effort was directed toward prohibiting inadmissible evidence from being injected during the trial. The trial lasted three days. During that time news reports regarding the case and its progress were reported. Those reports contained information which clearly was not admissible evidence and which would have been immediately rejected had it been proffered. Nevertheless, the members of the unsequesterd jury could well have been, though innocently, exposed to that information. To have granted the defendant's motion to poll the jury during the progress of the trial would have required only a few minutes of the court's time. Certainly the State's case would not have been prejudiced by the poll, unless it should have revealed that one or more of the jurors had in fact been exposed to the media releases, which was certainly information to which the defense was entitled. After the trial, as recited in the majority opinion, the attorney for the defendant sought to interview the jurors for the sole purpose of determining whether or not they were in fact exposed to the suspected news articles. Such was his right as declared in Canon EC 7-29. I am of the view that the facts known and recited by the defendant's attorney were such as to give him "reason to believe that ground for such challenge may exist. * * *" Prior to the recent adoption of the above mentioned Canon it was customary for attorneys to interview jurors after their discharge to determine whether or not their verdict was subject to any legal challenge. The Canon was not adopted for the purpose of thwarting justice nor covering up grounds for legal challenges of jury verdicts. The sole purpose of the Canon is to prohibit attorneys from harassing or embarrassing jurors and from influencing his or her action in any subsequent jury service.
I would remand the case with directions that the appellant's counsel be permitted to interview the jurors in accordance with Canon EC 7-29. Should such interview reveal grounds for a challenge to the verdict such grounds should be considered and ruled upon by the trial judge.
In all other respects I concur with the majority.