NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

CALVIN W. DOWD,                      )
                                     )
            Appellant,               )
                                     )
v.                                   )        Case No.  2D14-4961
                                     )
STATE OF FLORIDA,                    )
                                     )
            Appellee.                )
_____)

Opinion filed May 26, 2017.

Appeal from the Circuit Court for
Pinellas County; Michael F. Andrews,
Judge.

John H. Trevena and Cynthia E.
Richards, Largo, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Jonathan P. Hurley,
Assistant Attorney General, Tampa, for
Appellee.


KELLY, Judge.


        Calvin W. Dowd appeals from his judgment and sentence for lewd and

lascivious molestation.  He raises three issues in this appeal, none of which require

reversal.

Dowd first challenges the trial court's order denying his motion to suppress the post-Miranda[1] statements he made to sheriff's detectives. Dowd argues the totality of the circumstances demonstrate the statements are the product of coercive police tactics designed to extract an involuntary confession. We disagree. When a defendant alleges his statement is the product of police coercion, courts must determine the voluntariness of the confession by examining the totality of the circumstances. Traylor v. State, 596 So. 2d 957, 964 (Fla. 1992). Dowd argues the trial court erred because it evaluated each of the detectives' tactics separately instead of cumulatively. The trial court's order demonstrates otherwise. The sixteen-page order shows the trial court thoroughly considered each factor Dowd raised as a part of its larger analysis of the totality of the circumstances. We find no error in the trial court's analysis or in its conclusion that "[t]he admission was a free choice made by a man who appeared burdened by a secret and relieved, even if only temporarily, by its revelation."

Dowd also challenges the trial court's decision to allow Willams[2] Rule evidence. We need not decide whether the trial court abused its discretion in allowing the challenged evidence because after a careful review of the record on appeal, we are convinced beyond a reasonable doubt that the error, if any, did not contribute to the verdict. See State v. DiGuilio, 491 So. 2d 1129, 1135 (Fla. 1986).

Finally, Dowd argues the trial court should have granted his motion to interview jurors. Dowd filed the motion pursuant to Florida Rule of Criminal Procedure 3.575. We review a trial court's decision on a motion to interview jurors under an abuse

---

[1]Miranda v. Arizona, 384 U.S. 436 (1966).

[2]Williams v. State, 110 So. 2d 654 (Fla. 1959).

of discretion standard.  Gray v. State, 72 So. 3d 336, 337 (Fla. 4th DCA 2011) (quoting

Anderson v. State, 18 So. 3d 501, 509 (Fla. 2009)).  Rule 3.575 states as follows:

> A party who has reason to believe that the verdict may be
> subject to legal challenge may move the court for an order
> permitting an interview of a juror or jurors to so determine.
> The motion shall be filed within 10 days after the rendition of
> the verdict, unless good cause is shown for the failure to
> make the motion within that time.  The motion shall state the
> name of any juror to be interviewed and the reasons that the
> party has to believe that the verdict may be subject to
> challenge.  After notice and hearing, the trial judge, upon a
> finding that the verdict may be subject to challenge, shall
> enter an order permitting the interview, and setting therein a
> time and a place for the interview of the juror or jurors, which
> shall be conducted in the presence of the court and the
> parties.  If no reason is found to believe that the verdict may
> be subject to challenge, the court shall enter its order
> denying permission to interview.

Dowd's motion alleged that an alternate juror approached members of his family and

told them that before jury deliberations began, some jurors had discussed the trial.  The

alternate also said the jurors had elected the foreman on the first day of trial.  Dowd

contends the alternate juror's allegations demonstrate the "verdict may be subject to

challenge."  Accordingly, rule 3.575 requires the trial court to permit the interview.

The trial court denied Dowd's motion after finding that the facts alleged by

the alternate juror either pertained to matters that inhered in the verdict or that they did

not demonstrate a reasonable possibility that Dowd was prejudiced.  Dowd contends

the trial court did not follow the proper procedure because it determined the issue of

prejudice without first conducting any interviews.  He argues that once he presented

facts showing juror misconduct, the court should have ordered the interviews.  After the

interviews, the court could then conduct an evidentiary hearing at which the State would

have to show the misconduct did not prejudice Dowd.  We disagree.  The trial court

- 3 -

correctly recognized that absent a preliminary showing of prejudice, Dowd was not entitled to interview jurors.

At one time it was "common practice for counsel to interview jurors at the end of a trial, both to find out 'what went wrong' and for the general education of counsel." Brassell v. Brethauer, 305 So. 2d 217, 219 (Fla. 4th DCA 1974); see also Branch v. State, 212 So. 2d 29, 32 (Fla. 2d DCA 1968) (noting that after a trial, the appellant's counsel had a conversation with a juror "for his own betterment and education"); Bullard v. State, 324 So. 2d 652, 655 (Fla. 1st DCA 1975) (Boyer, C.J., dissenting) (noting that it was an attorney's "Right" to interview jurors after the trial and that it "was customary for attorneys to interview jurors after their discharge to determine whether or not their verdict was subject to any legal challenge"). In 1966, the Florida Bar asked the supreme court to "amend[] Canon 23 . . . so as to terminate indiscriminate interviewing of jurors by requiring that a lawyer have 'reason to believe' [the verdict was subject to challenge] and that he file notice of his intention to interview." Brassell, 305 So. 2d at 219-20 (quoting In Re Canon of Ethics Governing Attorneys, 186 So. 2d 509, 510 (Fla. 1966)); see also Branch, 212 So. 2d at 32 (noting that Canon 23 prohibits inquiry by an attorney of a juror except to challenge for legal cause).

Canon 23 was the predecessor of Disciplinary Rule 7-108(D) and Ethical Consideration 7-29 of the Code of Professional Responsibility. Ethical Consideration 7-29 identified the circumstances under which an attorney could interview a juror:

> Both before and during the trial, a lawyer should avoid conversing or otherwise communicating with a juror on any subject, whether pertaining to the case or not. Subject to any limitations imposed by law it is a lawyer's right, after the jury has been discharged, to interview the jurors solely to determine whether their verdict is subject to any legal

challenge [p]rovided he has reason to believe that ground for such challenge may exist, and further provided that prior to any such interview . . . he shall file in the cause, and deliver a copy to the trial judge and opposing counsel, a notice of intention to interview such juror or jurors setting forth in such notice the name of each such juror.

Brassell, 305 So. 2d at 219 (quoting Ethical Consideration 7-29).

In Brassell, the court was tasked with deciding what role, if any, the court played under this provision. After reviewing the provision's history, the court rejected the argument that the trial court's only role was simply to receive the notice. Instead, it held the trial court had a duty to determine whether the party seeking the interview "had reason to believe the verdict was defective." 305 So. 2d at 220. Given that, it concluded "a fair reading of the rule requires the notice to contain a recitation of the known facts giving rise to the 'reason to believe that ground for such challenge may exist.' " Id. at 219 (quoting Ethical Consideration 7-29). The court held that if the notice did not demonstrate a "reasonable ground to believe" the verdict was subject to challenge, a trial court could prohibit the interview. Id.

In 1976, less than two years after the court in Brassell faced the question of how to implement Disciplinary Rule 7-108, the supreme court adopted Florida Rule of Civil Procedure 1.431(g) to "establish a procedure for interviewing jurors." In re The Fla. Bar, Rules of Civil Procedure, 339 So. 2d 626, 629 (Fla. 1976) (citing DR 7-108 and explaining "[s]ubdivision (g) has been added to establish a procedure for interviewing jurors").[3] In pertinent part, rule 1.431(h) provides:

A party who believes that grounds for legal challenge to a verdict exist may move for an order permitting an interview

_____

[3]Rule 1.431(g) has since been redesignated as (h). See Committee note to Fla. R. Civ. P. 1.431, 1988 Amendment.

- 5 -

of a juror or jurors to determine whether the verdict is subject to the challenge. . . . The motion shall state the name and address of each juror to be interviewed and the grounds for challenge that the party believes may exist.[4]

It was not until 2004 that the supreme court adopted Florida Rule of Criminal Procedure 3.575.[5] In adopting the rule the court explained that

unlike the rules of Civil Procedure, the Rules of Criminal Procedure do not provide a procedure for interviewing jurors. Instead . . . criminal attorneys have relied on Rule Regulating the Florida Bar 4-3.5(d)(4) which allows an attorney to interview a juror to determine whether the verdict may be subject to legal challenge after filing a notice of intention to interview.

Amendments to the Fla. Rules of Criminal Procedure, 886 So. 2d 197, 198-99 (Fla. 2004) (footnotes omitted). The court included commentary explaining the rule "does not abrogate" the procedure provided for in rule 4-3.5.[6] Id. at 209. This seems at odds with the commentary to rule 1.431(h) which explains the court-adopted rule 1.431(h) to establish a procedure for interviewing jurors under what was then DR 7-108, not as an alternative to that rule. Whether counsel should proceed under the applicable procedural rule or under the Bar's rule is largely academic, however. As we will explain, each rule requires counsel to make the same showing before the court may allow a juror interview.

---

[4]Effective January 1, 2017, subsection (h) was amended to provide additional time to file the motion and to use "must" rather than "shall." In re Amendments to the Fla. Rules of Civil Procedure, 199 So. 3d 867, 883 (Fla. 2016).

[5]Rule 3.575 was adopted in October 2004 and became effective January 1, 2005. Amendments to the Fla. Rules of Criminal Procedure, 886 So. 2d 197, 200 (Fla. 2004).

[6]The restriction on juror interviews is now found at rule 4-3.5(d)(4) of the Rules of Professional Conduct. The rule has been editorially revised somewhat, but the substance is unchanged.

In Baptist Hospital of Miami, Inc. v. Maler, 579 So. 2d 97 (Fla. 1991), the supreme court clarified the showing counsel must make before a trial court can permit a juror interview. Emphasizing the "strong public policy against allowing litigants either to harass jurors or to upset a verdict by attempting to ascertain some improper motive underlying it," the court held "an inquiry is never permissible unless the moving party has made sworn factual allegations that, if true, would require a trial court to order a new trial." Id. at 100.[7] The court explained its holding was intended to clarify language in State v. Hamilton, 574 So. 2d 124 (Fla. 1991), that it believed could be construed to authorize a juror interview "even though the alleged misconduct [by a juror] was of a type highly unlikely to indicate any prejudice whatsoever." Maler, 579 So. 2d at 100. The court concluded stating, "the case law on this topic allows inquiry only into objective acts committed by or in the presence of the jury or a juror that might have compromised the integrity of the fact-finding process." Id. at 101; see also Johnson v. State, 804 So. 2d 1218, 1225 (Fla. 2001) ("As explained . . . in [Maler], juror interviews are not permissible unless the moving party has made sworn allegations that, if true, would

---

[7]Maler's reference to "sworn allegations" has caused confusion because that language is neither in rule 1.431 nor is it in rule 3.575. In City of Winter Haven v. Allen, 589 So. 2d 968, 969 (Fla. 2d DCA 1991), this court noted Maler "effectively amended Florida Rule of Civil Procedure 1.431(h) to require that a motion to interview be accompanied by 'sworn factual allegations.' " In Ramirez v. State, 922 So. 2d 386, 389 (Fla. 1st DCA 2006), the court stated that the supreme court in Maler "necessarily disavowed its *dicta* (and any possible holding) requiring sworn allegations . . . when it adopted Rule 3.575, which contains no requirement that any motion filed under the rule be verified." Ramirez overlooks the fact that when the court decided Maler, rule 1.431 had already been adopted, and it did not require sworn allegations. Further, the supreme court continues to use the standard announced in Maler, including the need for sworn allegations, even where an interview is sought under rule 3.575. See, e.g., Crain v. State, 78 So. 3d 1025, 1045 (Fla. 2011). Given that, it seems unwarranted to assume the supreme court intended to disavow that statement in Maler.

require the court to order a new trial because the alleged error was so fundamental and prejudicial as to vitiate the entire proceedings."). The supreme court has applied this standard regardless of whether the request came via rule 1.431(h), rule 4-3.5(d)(4), or rule 3.575. See, e.g., Johnson, 804 So. 2d at 1224-25 (applying Maler standard to a request under rule 4-3.5(d)(4)); see also Crain v. State, 78 So. 3d 1025, 1045 (Fla. 2011) (citing Maler standard as applicable to requests under rule 3.575 and rule 4-3.5). Thus, although the wording of these rules is not identical, the differences are not substantive in terms of what a party must demonstrate before the court will allow a juror to be interviewed.[8]

The trial court properly utilized this standard in analyzing Dowd's motion. The motion alleged generally that the alternate juror claimed the jury "constantly discussed" the case among themselves. The only specifics provided were that the jury discussed how the verdict might impact the defendant's son, how the judicial system was unfair to defendants, how the dates of the offense did not make sense, that the testimony was confusing, and that the detective who investigated the case was not credible. Jurors also expressed opinions regarding the victim's mother's treatment of the victim and speculated about what sentence Dowd might receive. Finally, the motion alleged the jury selected a foreman on the first day of trial.

First, the trial court correctly recognized Dowd could not question jurors about whether they were influenced by speculation regarding his potential sentence.

---

[8]We acknowledge dicta in Defrancisco v. State, 830 So. 2d 131, 133 (Fla. 2d DCA 2002), stating a party seeking a juror interview under rule 4-3.5 has a less demanding burden than under rule 1.431(h). As explained above, the case law from the supreme court contradicts this observation.

The law does not permit inquiry into the "emotions, mental processes, or mistaken beliefs of jurors." Maler, 579 So. 2d at 99; see also Hamilton, 574 So. 2d at 128 (citing section 90.607(2)(b), Florida Statutes (1987), of the Florida Evidence Code as the basis for this prohibition).[9] The same is true regarding the discussions about how the verdict might impact Dowd's son.

The trial court also correctly recognized the comments about the judicial system being unfair to defendants did not amount to discussions about the facts of the case, nor did the comments demonstrate any possible prejudice to Dowd. Likewise, the court correctly found the allegation that jurors prematurely discussed who would be foreman did not go to any issue in the case and did not demonstrate prejudice. See, e.g., Johnson v. State, 696 So. 2d 317, 324 (Fla. 1997) (explaining that jurors' premature discussion of a jury foreperson was improper but was not prejudicial because it did not go to any issue in the case and therefore could not have influenced the outcome).

Finally, with respect to the remaining comments, the trial court recognized that while they may have amounted to discussions about the case, they were not "so prejudicial as to vitiate the entire proceedings and require a new trial." See Crain, 78 So. 3d at 1045. In Johnson, the supreme court described comments similar to those alleged in this case as improper but not prejudicial because they were "simply a

---

[9]Section 90.607(2)(b) provides that "[u]pon an inquiry into the validity of a verdict or indictment, a juror is not competent to testify as to any matter which essentially inheres in the verdict or indictment." This evidentiary rule codifies the Iowa rule iteration of the common law no-impeachment rule. It is this limit on what jurors may testify to postverdict that undergirds the circumstances in which courts have allowed juror interviews. See Hamilton, 574 So. 2d at 128; see also Devoney v. State, 717 So. 2d 501 (Fla. 1998).

reaction" to testimony and did not suggest the jury had formed a premature opinion regarding the defendant's guilt or that it had received any extrinsic information. See 696 So. 2d at 323-25 (citing Amazon v. State, 487 So. 2d 8, 11-12 (Fla. 1986)). Nor do comments in this case suggest the jurors agreed "to disregard their oaths and ignore the law." See Sheppard v. State, 151 So. 3d 1154, 1172 (Fla. 2014) (citing Reaves v. State, 826 So. 2d 932, 943 (Fla. 2002)). Absent allegations of an overt prejudicial act, external influence, or an actual, express agreement between two or more jurors to disregard their oaths and instructions, the court may not order a juror interview. See Reaves, 826 So. 2d at 943; Devoney v. State, 717 So. 2d 501, 501-04 (Fla. 1998); Russ v. State, 95 So. 2d 594, 598-601 (Fla. 1957).

Dowd cites Ramirez v. State, 922 So. 2d 386 (Fla. 1st DCA 2006), in support of his argument that the trial court erred when it evaluated prejudice before allowing the jurors to be interviewed. Ramirez holds that once a claim of premature deliberations is asserted, the defendant has apprised the trial court "of 'reasons . . . to believe that the verdict may be subject to challenge,' " and the court must allow the jurors to be interviewed. Id. at 389-90 (quoting Fla. R. Crim. P. 3.575). It then explains that "[a]t any evidentiary hearing after an opportunity for juror interviews on remand, the initial burden will be on the defense" to show prejudice resulted or that the conduct was such that it raised the presumption of prejudice. Id. at 390 (quoting Russ, 95 So. 2d at 600-01). What Dowd overlooks is that not all juror discussions amount to "premature deliberations." See, e.g., Sheppard, 151 So. 3d at 1172. "Premature deliberations" refers to discussions in which jurors have expressed opinions regarding a defendant's guilt before the close of the evidence. See, e.g., Johnson, 696 So. 2d at 324. In

- 10 -

Ramirez, jurors were alleged to have discussed the defendant's guilt before the close of all the evidence. Id. at 387-88. Here, we have no such allegation. The court in Ramirez did not discuss the trial court's initial role in evaluating the likelihood of prejudice to the defendant because it was unnecessary to do so given the facts in that case. The defendant's allegations in Ramirez set forth a prima facie case of premature deliberations and thus raised a possibility of prejudice sufficient to warrant juror interviews. 922 So. 2d at 390; see also Sheppard, 151 So. 3d at 1172 ("[A] claim of premature jury deliberations sufficient to require questioning of the entire jury panel requires that multiple jurors discuss the case together and discuss their opinions as to the proper verdict.").

Dowd has not shown any error by the trial court that would warrant a reversal of his judgment and sentence. Accordingly, we affirm.

Affirmed.

BLACK and BADALAMENTI, JJ., Concur.